IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No. CR 15-2485 JB

KEVIN FOLSE,

       Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** comes before Court on: (i) Plaintiff United States' Sealed Notice of Intent to Introduce Evidence Pursuant to Rule 404(b) and Request for Pretrial Ruling on the Government's Request to Admit Evidence, filed September 25, 2015 (Doc. 62)("Notice"); and (ii) Defendant Kevin Folse's Objection to United States' Rule 404(b) Notice, filed September 28, 2015 (Doc. 69)("Objection"). The issues are: (i) whether Plaintiff United States of America may introduce a letter allegedly authored by Defendant Kevin Folse to "Markus," a roommate of the alleged victim, Valente Estrada, under the res gestae doctrine because it is inextricably intertwined with the evidence in this case, see Letter to "Markus" (undated), filed September 25, 2015 (Doc. 62-1)("Estrada Letter"); (ii) whether Plaintiff United States may introduce the Estrada letter to show Folse's opportunity, knowledge, or the absence of mistake under rule 404(b) of the Federal Rules of Evidence; (iii) whether the United States may introduce the

---

[1]In its Sealed Memorandum Opinion and Order, filed October 21, 2015 (Doc. 110)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties 7 calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MO in an unsealed form.

Estrada Letter as a party opponent's statement; and (iv) whether rule 403 of the Federal Rules of Evidence nonetheless bars the Estrada Letter's admission because its probative value is substantially outweighed by the danger of unfair prejudice.  First, the Court concludes that the Estrada Letter is not admissible under the res gestae doctrine because it is not inextricably intertwined with the present case and did not exist until well after the events underlying the charges.  Second, the court determines that the Estrada Letter falls within the scope of rule 404(b), because: (i) the United States provided sufficient notice of the Letter and its attempt to use it for a legitimate purpose under rule 404(b); and (ii) the letter shows Folse's consciousness of guilt, which is relevant to issues such as motive, intent, plan, or knowledge.  The Court thus denies Folse's request to declare the letter inadmissible -- for want of notice or under rule 404(b) -- without prejudice to him renewing the request at trial.  The Court reserves judgment whether the United States has authenticated the Estrada Letter by a preponderance of the evidence.  Third, the Court is likely to admit the Estrada Letter if the United States can sufficiently authenticate it, in part because it is the statement of a party opponent.  Fourth, the Court concludes that redactions to the Estrada Letter could mitigate the possibility of unfair prejudice.  The Court thus directs the parties to confer on proposed redactions.  The Court therefore grants the requests in the United States' Notice in part and denies them in part, and overrules the Objection in part and sustains it in part.  The Court will make pretrial rulings on certain admissions issues, but not on authentication.

## FACTUAL BACKGROUND

The Court takes its facts -- for background purposes only, as Folse is presumed innocent until proven guilty at trial -- primarily from the Criminal Complaint, filed July 6, 2015 (Doc. 2)("Complaint").  It also draws on the Superseding Indictment and hearing transcript for

important details where necessary.  See Superseding Indictment, filed September 10, 2015 (Doc. 31)("Superseding Indictment"); Transcript of Motion Proceedings (taken September 30, 2015)("Tr.").[2]

Between June 30, 2015, and July 2, 2015, Albuquerque Police Department ("APD") detectives searched for Folse, who was fleeing from law enforcement and had committed "various violent crimes."  Complaint ¶ 6, at 3.  On July 2, 2015, the APD received information that Folse was present at 1825 Pitt Street NE in Albuquerque, New Mexico.  APD officers approached the residence and observed an individual who matched Folse's description, but could not positively identify him.  See Complaint ¶ 7, at 3.  They thus did not enter the residence.  See Complaint ¶ 7, at 3.  At approximately 11:00 a.m., Folse left the house with his girlfriend, Angela Murray.[3]  Folse held a firearm and a knife to Valente Estrada, a resident of the house, and ordered him to hand over the keys to his silver Saturn passenger car.  See Complaint ¶ 8, at 3; Superseding Indictment ¶ 2, at 2.  Folse and Murray then fled the house with Estrada in a passenger seat.  See Superseding Indictment ¶ 2, at 2.  Folse and Murray did not respond to APD officers' attempts to stop the car, and Folse later threw a semiautomatic pistol from the car.  See Complaint ¶ 8, at 3.  He eventually crashed the Saturn and fled on foot.  See Complaint ¶ 9, at 4.

At roughly 11:05 a.m., Folse took a 2008 Kia Sorento from Michael B, a juvenile who was in the car.  See Superseding Indictment ¶ 4, at 3.  Folse ordered him out and drove away.

---

[2]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

[3]Murray was initially a co-defendant in this matter.  See Superseding Indictment at ¶ 2, at 2.  The Court severed the two matters on September 29, 2015.  See Order Granting Defendant Kevin Folse's Motion to Sever Defendants, filed September 29, 2015 (Doc. 72).

See Superseding Indictment ¶ 4, at 3.  Police officers later arrested Folse without incident at the Isleta Casino outside of Albuquerque.  See Complaint ¶ 9, at 4.

APD officers interviewed Estrada and one other passenger who escaped from the wrecked Saturn.  See Complaint ¶ 11, at 4.  Both stated that Folse forced them into the car against their will and that he later threw a firearm from the car's window.  See Complaint ¶ 11, at 4.  The United States intends to use Estrada, the passenger from the Saturn, as its "primary witness" against Folse.  Tr. at 2:14-15 (Hurtado).

On September 22, 2015, the United States obtained a photocopy[4] of an unsigned letter that Folse allegedly authored.  See Notice ¶ 2, at 1-2.  The Estrada Letter is addressed to "Marcus," also known as "Creeper," Estrada's roommate.  Estrada Letter at 1.  It reads in relevant part:

> As of right now, my life is on the line. The F.B.I. is trying to give me life, without parole for being a career kriminal [sic], I'm in segregation under investigation 23 hour lockdown, & I start jury trial on Sept. 16th in Federal courthouse Judge Browning. I love you Brother & I hope you can make it. I will be released on all charges if some fool name Valente does not show up to testify against me I need you to say a prayer "do what you can" & be there if you can, also tell Tyler [Robert Springer Tyler] I will help him in Court. I have the title to that Cadillac the A.P.D. lied to him, tell your roommate in the back room I'm a good man & its [sic] all cool just please rap to him for me, tell him to go M.I.A. "chill out for a while" I get set free nxt [sic] week or get life in prison based on Valente testimony.

Estrada Letter at 1 (emphasis added).  The United States alleges, "on good faith and belief based on the detailed description of this case, the nature of the letter, and other considerations, that [Folse] wrote that letter."  Notice ¶ 2, at 1.  The United States contends that "Valente" is Estrada, Marcus' roommate and its "primary witness" against Folse.  Tr. at 2:14-15 (Hurtado); id. at 3:13-

---

[4]Estrada kept the original version of the Estrada Letter.  See Tr. at 14:11-16 (Hurtado, Court).  As discussed in greater detail below, the Court is more likely to admit the letter if the United States can introduce the original version.  See Tr. at 21:7-13 (Court).

14 (Hurtado).  It has been unable to locate any of the other hostages or potential witnesses to the alleged carjackings.  See Tr. at 6:19-22 (Hurtado).  It attributes this lack of alternatives to the potential witnesses' "nomadic lifestyle," which often involves a lack of full-time jobs, fixed addresses, or regular hours.  Tr. at 20:25-21:6 (Hurtado).

## PROCEDURAL BACKGROUND

On July 14, 2015, a grand jury indicted Folse for: (i) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (ii) carjacking, in violation of 18 U.S.C. § 2119; and (iii) using, carrying, and brandishing a firearm in relation to and in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  See Indictment, filed July 14, 2015 (Doc. 10)("Indictment").

On September 9, 2015, a grand jury returned a superseding indictment.  See Superseding Indictment at 1.  The Superseding Indictment fleshed out the skeletal allegations in the Indictment.  It first preserved the original Indictment's felon in possession charge.  See Superseding Indictment ¶ 1, at 1-2.  Second, it stated that Folse "did take and attempt to take from V.E., the owner, a 2002 Saturn . . . by force, violence and intimidation, in that defendant held a firearm and knife to V.E., and ordered V.E. to surrender the motor vehicle to the defendant and accompany the defendant in the motor vehicle."  Superseding Indictment ¶ 2, at 2.  Third, it preserved the "brandishing" charge from the Indictment.  Superseding Indictment ¶ 2, at 2.  Fourth, it added a new carjacking count related to the 2008 Kia Sorento taken by "force, violence and intimidation" from "Michael B."  Superseding Indictment ¶ 4, at 3.  Fifth, it added a new "brandishing" charge for the second carjacking.  Superseding Indictment ¶ 5, at 3.  The United States later dismissed the fifth count, because it obtained evidence indicating that Folse did not use a firearm in the second alleged carjacking.  See United States' Unopposed Motion to

Dismiss Count Five of the Superseding Indictment ¶¶ 5-9, at 3, filed October 1, 2015 (Doc. 83). The case is set for jury trial on October 5, 2015. <u>See</u> Order Continuing Trial Scheduled for September 16, 2015, filed September 21, 2015 (Doc. 60).

1. **<u>The Notice</u>.**

The United States filed its Notice pursuant to rule 404(b)(2)(A) on September 25, 2015. <u>See</u> Notice at 1. The United States indicates that it will use "evidence of another crime and act" for reasons other than "showing defendant's character and his propensity to act within that character." Notice ¶ 1, at 1. It will use the evidence instead "on cross-examination" for other purposes, including but not limited to proving Folse's "opportunity to commit the offense; knowledge of his alleged actions; and/or absence of mistake." Notice ¶ 1, at 1.

The United States then attempts to justify its introduction of the Estrada Letter. First, it argues that rule 404(b)'s approach to "other crimes" evidence is "one of inclusion rather than exclusion," and allows other crimes or acts evidence "unless it tends to prove only criminal disposition." Notice ¶ 3, at 4. It cites a series of cases from the United States Court of Appeals for the Tenth Circuit. <u>See</u> Notice ¶ 4, at 4 (citing <u>United States v. Naranjo</u>, 710 F.2d 1465, 1467 (10th Cir. 1983)(Brown, J.)(admitting evidence of repeated spousal abuse against defendant accused of murdering his wife); <u>United States v. Nolan</u>, 551 F.2d 266, 272 (10th Cir. 1977)(Barrett, J.)(admitting a prior British conviction for importing drugs where both shipments involved cannabis concealed in wood from New Delhi, India)).

The United States contends that, were Folse to testify, "he probably would be exerting some affirmative defense on one or more of the elements of the charged offenses." Notice ¶ 2(c), at 3. Although it allows that anticipating that defense "would be unreasonably speculative," it adds that "the letter strongly suggests that defendant has *not* asserted a lack of opportunity, his

intent was not to take the motor vehicle, that he is not the individual who comitted [sic] the alleged offense, or that a mistake occurred."  Notice ¶ 2(c), at 3 (emphasis in original).

The United States then summarizes its position.  First, it states that the evidence is not offered to prove criminal disposition.  Second, it contends that "[t]he probative value of this evidence outweighs any potential prejudicial impact."  Notice ¶ 4, at 4.  It cites cases suggesting that rule 403 of the Federal Rules of Evidence "does not protect a party from all prejudice, only unfair prejudice."  Notice ¶ 4, at 4 (citing United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)(Ebel, J.))(emphasis added).

Folse replied three days later.  See Objection at 1.  He first notes that the United States is required, under rule 404(b)(2)(A), to "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial."  Objection at 1.  He cites to the relevant Advisory Committee notes, which allow a court "in its discretion" to determine "that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness."  Objection at 1 (citing Fed. R. Evid. 404(b), Advisory Committee Notes to subdivision (b)).  He concludes that "[t]he Notice fails to describe how the letter is admissible under Rule 404(b). . . . This Court and Mr. Folse should not be required to guess."  Objection at 1.

Folse then argues that, assuming he authored the letter and it is otherwise admissible, it establishes only that he believed Estrada's absence from the trial might help him prevail.  See Objection at 2.  This belief, he says, "does not tend to show 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'"  Objection at 2 (quoting Fed. R. Evid. 404(b)(2)).

Third, Folse contends that the Court should refrain from ruling on the letter's admissibility until he testifies and until his testimony is relevant to the letter. <u>See</u> Objection at 2-3. Finally, Folse requests that the Court permit redactions if it determines that the letter is admissible. <u>See</u> Objection at 3. He points to "references Mr. Folse makes to being incarcerated, qualifying as a career criminal, being in segregation and apologies Mr. Folse appears to be making to the letter's recipient." Objection at 3.

### 2.      **The Hearing**.

The Court held a hearing on September 30, 2015. <u>See</u> Tr. at 1:7 (Court). The United States explained that Estrada was "living at the residence that Mr. Folse basically commandeered," Tr. at 2:18-19 (Hurtado), and that "[h]e was one of the hostages . . . taken by the defendant during the first carjacking scenario on July 2, 2015," Tr. at 3:15-18 (Hurtado). It stated that the United States was "100 percent certain" that Folse wrote the letter and that he intended for Creeper to give it to Estrada. Tr. at 2:9-16 (Hurtado). The United States "concluded that, while there was no overt threatening in that letter . . . [,] Mr. Valente Estrada would most probably feel somewhat intimidated." Tr. at 3:20-25 (Hurtado).

The United States then predicted that Folse would contend that Estrada "either initiated that carjacking himself . . . or . . . was a willing participant as opposed to a hostage." Tr. at 4:9-16 (Hurtado). It sought to admit the Estrada Letter under rule 404(b) to rebut these theories. It argued that Folse had placed his or his victim's character at issue, and that character evidence "is admissible, because it goes to show that the defendant is taking measures to try to prevent Mr. Estrada from testifying." Tr. at 4:19-25 (Hurtado).

The United States requested, in the alternative, that the Court admit the Estrada Letter as a statement of a party opponent. It explained that the Estrada Letter is "basically an admission

from the defendant . . . that he's [] guilty of the conduct that forms the basis of the superseding indictment."   Tr. at 5:6-10 (Hurtado).   In other words, it would demonstrate Folse's "consciousness of guilt."  Tr. at 6:17 (Hurtado).

The Court pushed back on the United States' 404(b) argument.  It commented that the United States sought admission to "show consciousness of guilt" rather than for typical 404(b) purposes.  Tr. at 7:3-6 (Court).  Folse's alleged witness intimidation might be "additional wrongdoing," but intimidation was "not the issue here.  It's more that he did another kind of wrong to try to keep from being convicted of this crime."  Tr. at 7:6-12 (Court).  When the Court asked for a specific example of how the Estrada Letter qualified under rule 404(b), the United States said it would help to establish "that the alleged victim in this case was actually forced to comply with the defendant's demands," refuting the defense's likely argument that Estrada was a willing participant.  Tr. at 8:6-13 (Hurtado).  The United States admitted that it "agrees with the Court that it's more properly admitted as an admission by a party opponent."  Tr. at 8:24-9:2 (Hurtado).

Folse "agrees with the Court that [the Estrada Letter] really isn't 404(b)."  Tr. at 10:17-18 (Villa).  If the Estrada Letter were "true 404(b) evidence," he submits, the Court could make a decision before trial.  Tr. at 12:3-5 (Villa).  Folse argued that the Court had to wait until trial to admit the Estrada Letter as a party opponent's statement.  The Court needed more information before it could determine admissibility, he contended, including the nature of Folse's defense, whether the Estrada Letter is relevant under rule 403, and the contents of Folse's possible testimony.  See Tr. at 10:16-12:9 (Villa).

The United States then clarified that it would seek to introduce the Estrada Letter as a party opponent's statement regardless whether Folse took the stand.  Specifically, it would find a

witness from the jail familiar with Folse's handwriting to authenticate the document.  See Tr. at 12:16-13:6 (Hurtado).

The Court indicated that, given that the United States seeks to use the Estrada Letter in its "case-in-chief," it has to make a pretrial ruling, because the Estrada Letter's admission "doesn't depend upon anything that Mr. Folse is going to say."  Tr. at 14:20-25 (Court).  Folse made several arguments against admission in any context: (i) rule 403 could still bar the letter; (ii) it is unclear whether Estrada ever received the letter; and (iii) Folse's belief that Estrada's testimony could hurt his chances is not necessarily relevant because, as Folse explained, "I don't think a defendant wants a liar or a truth teller to come and testify against him in either situation."  Tr. at 15:8-10 (Villa); id. at 16:17-20 (Villa); id. at 18:11-19 (Villa).

The parties agreed that the Court would have to find, by a preponderance of the evidence, that Mr. Folse wrote the letter to allow its admission.  See Tr. 19:8-14 (Villa); id. at 20:5-7 (Villa).  The United States argued that it could authenticate the letter using the handwriting witness alone.  See Tr. at 20:8-15 (Hurtado).  It "hope[d]" it will be able to secure the original Estrada Letter before trial, but could not make any promises given the witnesses' "nomadic lifestyle."  Tr. at 20:25-21:6 (Hurtado).

The Court then made a proposal.  The Court said it would "withhold ruling on whether it's admissible until" it saw the authentication evidence, noting that it would "feel more comfortable letting it in if I've got the original here in the courtroom and I got Creeper" to provide background.  Tr. at 21:7-13 (Court).  It suggested that Folse send the United States a redacted version of the Estrada Letter to narrow their disputes.  See Tr. at 21:19-23 (Court).  Finally, it indicated the outcome: "I would be inclined to admit it if they can lay a proper foundation."  Tr. at 22:3-6 (Court).  The United States would have to prove that the first

carjacking occurred even if Folse took the stand and only addressed the second carjacking.  See Tr. at 22:8-16.   The Court thus overruled Folse's objection "without prejudice to maybe renewing it at trial if the Government doesn't prove up that it came from Mr. Folse satisfactorily."  Tr. at 22:17-20.

## LAW REGARDING RES GESTAE

The Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[] charged in the indictment."  United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(Logan, J.)(alteration in original)(internal quotations and citations omitted).  The Tenth Circuit has approved using res gestae evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae."  United States v. Kimball, 73 F.3d at 272  (internal quotations and citations omitted).  The Sixth Circuit has defined res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."  United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)(Collier, J.)(citations omitted).  See United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir. 1999)(Ebel, J.)(describing res gestae evidence as "inextricably intertwined with proper evidence" (internal quotations omitted)).  As the Sixth Circuit in United States v. Hardy explained,

> Proper background evidence has a causal, temporal or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's  testimony, or completes the story of the charged offense.

228 F.3d at 748 (citation omitted).  In Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166

(D.N.M Nov. 1, 2011)(Browning, J.), aff'd on other grounds, Wilson v. Jara, No. 11-2231, 2013 WL 923192 (10th Cir. Mar. 12, 2013)(unpublished),[5] the Court allowed evidence that, in the course of an allegedly unlawful arrest, a plaintiff spat on and touched the defendant police officers.  See 2011 WL 6739166, at *1, *8.  The Court concluded that the spitting was "res gestae of the incident," because it placed the plaintiff's conduct "in context": "If Wilson's touching of a police officer, and other conduct and speech, contributed to [her son's] resisting arrest, her conduct could be viewed as disturbing the peace and disorderly conduct. . . .  Wilson should not be able to suggest that everything was calm and her son did not resist arrest."  2011 WL 6739166, at *8.

In United States v. Ganadonegro, No. CR 09-0312 JB, 2011 WL 3957549 (D.N.M. Aug. 30, 2011)(Browning, J.), the Court allowed evidence that a defendant, accused of causing the death of an infant child, called a family member on three occasions to complaint that he could not get the infant to stop crying, and that the infant was crying when the family member arrived.  See 2011 WL 3957549, at *1.  The Court found that the evidence was res gestae and background information useful to "paint the picture that the baby cried a lot," and not that the defendant acted in conformity with his previous conduct.  2011 WL 3957549, at *1, *5 ("the evidence that the

---

[5]Wilson v. Jara is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(Brorby, J.).  The Court finds that Wilson v. Jara and United States v. Swan have persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

United States seeks to introduce is not 404(b) evidence, . . . it is closer to background evidence or res gestae evidence . . . .").  Additionally, in United States v. Zuni, No. CR 05-2369 JB, 2006 WL 4109664 (D.N.M. July 7, 2009)(Browning, J.), the Court admitted evidence that an alleged rape and kidnapping occurred after a defendant had a dispute with a victim regarding their children, and that the dispute escalated into violence and culminated in the charged offenses. 2006 WL 4109664, at *2-3.  The Court determined that this evidence made the charged offenses understandable "by describing the context in which they arose," as these events had a "causal, spatial, and temporal connection with the charged offense."  2006 WL 4109662, at *6.

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b) provides:

> **(b)**   **Crimes, Wrongs, or Other Acts.**
>
> > **(1)**   **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2)**   **Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:
> >
> > > **(A)**   provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> > >
> > > **(B)**   do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

- 13 -

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule, however, has a number of 'exceptions'[6] -- purposes for which such evidence will be admissible."  Wilson v. Jara, 2011 WL 6739166, at *5.  Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988)(Rehnquist, J.).  The Tenth Circuit has consistently applied that test:

---

[6]In a recent en banc opinion, the United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1).  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible *except* when it is used to prove motive, opportunity, intent, etc.  Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is *categorically* inadmissible.  Fed. R. Evid. 404(b)(1).  But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, *non-propensity* use.  Fed. R. Evid. 404(b)(2).  So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases.  In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

- 14 -

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(Ebel, J.)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)(Porfilio, J.)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002)(Holloway, J.); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(Briscoe, J.)(citing Huddleston v. United States, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character.  See United States v. Lucas, 357 F.3d 599, 611 (6th Cir. 2004)(Boggs, J.).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979)(Merritt, J.), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged.  United States v. Phillips, 599 F.2d at 136.  "'[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'"  United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(Tacha, J.)(quoting United States v. Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)(Tacha, J.)).  See United States v. Romero, No. CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b)

evidence almost always has some propensity evidence; that is the reason for limiting instructions.").

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(McKee, J.)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(Seymour, J.)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)(Seymour, J.)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d at 1436). Rules 401 to 403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the proponent must meet to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(Briscoe, J.)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(Brorby, J.)(holding that evidence about events

over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged").  The evidence's proponent may show this similarity through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(Niemeyer, J.)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc)).  See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982)(McWilliams, J.).  "A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind."  United States v. Myers, 550 F.2d 1036, 1045 (5th Cir. 1977)(Clark, J.)

In United States v. Tan, 254 F.3d 1204 (10th Cir. 2001), the Honorable LeRoy C. Hansen, United States District Judge for the District of New Mexico, excluded, in a second-degree murder case, evidence that the defendant had previously been convicted of driving while intoxicated.  See 254 F.3d at 1206-07.  The murder charge rose out of the defendant driving a vehicle while intoxicated and striking a motorcyclist with his vehicle.  See 245 F.3d at 1206.  Judge Hansen concluded that evidence of the other convictions would show only that the defendant had a propensity for drunk driving and would be more prejudicial than

probable.  See 254 F.3d at 1207.  The Tenth Circuit reversed.  In an opinion that the Honorable

Stephen H. Anderson, United States Circuit Judge for the Tenth Circuit, wrote, and Judges

Seymour and Kelly joined, the Tenth Circuit held that, because second-degree murder requires

proof of malice, the prior convictions were probative of the proper purpose of proving malice or

intent, reasoning that a person who is convicted of drunk driving is more aware of the substantial

risks and harm that it can cause to others.  See 254 F.3d at 1210-11.[7]

---

[7]Before United States v. Gomez, the Seventh Circuit used a four-part test to determine the admissibility of 404(b) evidence; the test included:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

United States v. Gomez, 763 F.3d at 852.  In United States v. Gomez, the Seventh Circuit abandoned its traditional four-part test in favor of a "straightforward rules-based approach" that it articulated to "produce clarity and better practice in applying the relevant rules of evidence." 763 F.3d at 853.  One of the main changes in the Seventh Circuit's approach is that the relevance, similarity, and timing of the other act depend on the particular theory of admissibility. See 763 F.3d at 854.  The Seventh Circuit also focused on the purpose of the other-act evidence to ensure that its relevance does not require a propensity inference.  See 763 F.3d at 856 ("[T]he district court should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose -- or more specifically, how the evidence is relevant without relying on a propensity inference."  (emphasis in original)).  For rule 403's balancing test, the Seventh Circuit focused on how contested an issue is to determine how relevant the other-act evidence is to the issue and to the case: the more disputed the issue, the more relevant the evidence.  See 763 F.3d at 859-60.  For example, for general intent crimes, evidence showing intent is likely irrelevant, unless the defendant puts intent at issue, but, for specific intent crimes, other-act evidence is more relevant to showing intent. See 763 F.3d at 857-59.

> [W]hen intent is not 'at issue' -- when the defendant is charged with a general-intent crime and does not meaningfully dispute intent -- other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice.  In contrast, when intent is "at issue" -- in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime -- other-act

> evidence *may* be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice.

763 F.3d at 859 (emphasis in original).  Finally, the Seventh Circuit held that district courts should draft customized jury instructions for the other-act evidence and that they should hesitate before giving a limiting instruction unless one of the parties requests one.  See 763 F.3d at 860-61.

The Tenth Circuit has consistently used a four-part test that is similar, but slightly different from the Seventh Circuit's test.  The Tenth Circuit's test provides that

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762.  Because "only the en banc court can overrule the judgment of a prior panel," United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc., 207 F.3d 1193, 1198 (10th Cir. 2000)(Lucero, J.), this four-part test binds the Tenth Circuit -- and, most importantly here, all district courts within the Tenth Circuit -- until the Tenth Circuit, sitting en banc, rules otherwise, see Stephen A. Saltzburg, Professor, George Washington University Law School, The Second Best Federal Bar Seminar Ever: Evidence (May 1, 2015)(noting that United States Courts of Appeals must go en banc to change their four-part tests).  Moreover, the Tenth Circuit, and every United States Court of Appeals with a four-part test, derived its test from the "four-step framework" that the Supreme Court set forth in Huddleston v. United States.    United States v. Record, 873 F.2d at 1374-75 ("Further, Huddleston provides a four-step framework for avoiding such prejudice, which will greatly simplify the task of a trial court in this circuit, as well as a reviewing court, in analyzing the admission of Rule 404(b) evidence.").  In Huddleston v. United States, the Supreme Court listed four rules of evidence that protect defendants from being unfairly prejudiced by evidence introduced under rule 404(b):

> We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b).  We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 -- as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness.  See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").  Rule 805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  A party opponent's statement is excluded from the definition of hearsay where:

---

Huddleston v. United States, 485 U.S. at 691-92 (citations omitted)(footnote omitted).
        While the Seventh Circuit abandoned its old four-part test, its new "rules-based approach" still considers each rule of evidence that the Supreme Court says protects litigants from unfair prejudice.  United States v. Gomez, 763 F.3d at 853-61 (applying rules 104, 105, 401, 402, 403, and 404(b) of the Federal Rules of Evidence).  Indeed, the Seventh Circuit described its change as "less a substantive modification than a shift in paradigm" to "produce clarity and better practice in applying the relevant rules of evidence."  763 F.3d at 853.  Because the Court of Appeals cannot abandon a Supreme Court case, any change the Tenth Circuit makes to its current four-part test -- which would require the en banc court -- must still apply the four factors -- i.e., the rules of evidence -- from Huddleston v. United States, even if the factors are not applied in the same mechanical fashion that the current test requires.

The statement is offered against an opposing party and:

> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  The Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir.

2006)(Seymour, J.)(alterations omitted)(internal quotations and alterations omitted).[8]

---

[8]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d), and uses instead the term "statements."  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling.  Fed. R. Evid. 801.

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989)(Baldock, J.).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(Tacha, J.)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)(Brorby, J.)).  The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010)(Baldock, J.).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999)(Kelly, J.), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983)(Ervin, J.); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980)(Russell, J.).  As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(Thomas, J.)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed.

1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)(Rehnquist, J.)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999)(Sanborn, J.). Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)(Ebel, J.); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)(Holloway, J.).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes).

## ANALYSIS

The Court will overrule Folse's Objection to the United States' Notice and will admit important portions of the Estrada Letter if the United States can sufficiently authenticate it.  First, res gestae does not allow the United States to admit a letter separate in time and nature from the underlying charges.  Second, rule 404(b) does not bar admission of the Estrada Letter, because the United States' Notice is sufficient, the Letter could be relevant to Folse's consciousness of guilt, and the Court can provide a limiting instruction on request.  Third, rule 802's prohibition against hearsay does not bar the Estrada Letter, because it is a party opponent's statement. Fourth, redactions to the Estrada Letter, with both parties' consent, may resolve any problems under rule 403.

I.   **THE DOCTRINE OF RES GESTAE DOES NOT PERMIT THE ESTRADA LETTER'S ADMISSION.**

The Estrada Letter is not sufficiently "intertwined with" the alleged offenses or other evidence that it is admissible under res gestae. United States v. McVeigh, 153 F.3d at 120. Folse allegedly authored the Estrada Letter while detained and represented by counsel, well after the carjackings and other events described in the Superseding Indictment.[9]   The Estrada letter thus lacks a "causal, temporal or spatial connection with the charged offense," does not describe "a prelude to the charged offense," and does not "complete[] the story of the charged offense." United States v. Hardy, 228 F.3d at 748 (citation omitted).

The Estrada Letter is distinguishable from other examples of evidence permitted under res gestae.  Evidence that a defendant charged with killing an infant to silence its cries placed several phone calls complaining that it would not stop crying provides helpful background information on the offense.  See United States v. Ganadonegro, 2011 WL 3957549, at *1, *5. Evidence that a couple had a harsh argument over their children before an alleged kidnapping and rape helped the trier of fact to understand the charged offenses by "by describing the context in which they arose."  United States v. Zuni, 2006 WL 4109662, at *6.  The Estrada Letter does not help the trier of fact to understand the acts alleged in the Superseding Indictment in the same way.  It instead provides evidence that the defendant, well after the incidents in question, "basically admitt[ed] that he's guilty of these charges."  Tr. at 6:1-7 (Hurtado).  It simply is not "appropriate in order to complete the story of the crime on trial by proving its immediate context."  United States v. Kimball, 73 F.3d at 272.

---

[9]The events alleged in the Superseding Indictment occurred on July 2, 2015.  See Superseding Indictment ¶¶ 1-5, at 1-3.  The Estrada Letter references a trial date of September 16, 2015.  Estrada Letter at 1.  This date was not established until the Court's Order of July 30, 2015.  See Order, filed July 30, 2015 (Doc. 20).

## II.   **RULE 404(b) DOES NOT BAR THE ESTRADA LETTER'S ADMISSION**.

The United States asks the court for a pretrial ruling that the Estrada Letter is admissible.
Folse asks the Court to "rule that the letter is not admissible in the Government's case-in-chief
for want of Notice or, alternatively, because it is not admissible under rule 404(b)." Objection at
3. The Court concludes that the Estrada Letter is not inadmissible for want of notice and that it is
admissible under rule 404(b). The Court will, however, require the United States to show that
the letter is authentic and Folse's own writing at trial. It will also provide Folse with a limiting
instruction upon request.

### A.   **THE UNITED STATES' RULE 404(b) NOTICE WAS COMPLETE.**

The United States has provided reasonable notice of its potential 404(b) evidence. Folse
contends that the Court should deny the notice, because it "fails to describe how the letter is
admissible under Rule 404(b)." Objection at 1. This argument misreads the Rule's
requirements. Rule 404(b)(2)(A) requires the United States to "provide reasonable notice of the
general nature" of evidence of "a crime, wrong, or other act." Fed. R. Evid. 404(b)(1)-(2). The
United States need not provide "the dates, times, places and persons involved in such acts; the
statements of each participant; [or] any documents that contain evidence of such other crimes or
acts. . . ." United States v. Stoecker, 920 F. Supp. 876, 883 (N.D. Ill. 1996)(Gettleman, J.). See
United States v. Jackson, 850 F. Supp. 1481, 1493 (D. Kan. 1994)(Crow, J.)("The notice need
not provide precise details regarding the date, time, and place of the prior acts, but it must
characterize the prior conduct to a degree that fairly apprises the defendant of its general
nature.")(citations and quotations omitted). Unlike the prosecution in United States v. Stoecker
and United States v. Jackson, however, the United States has provided details on the time and
place of the alleged bad acts. See United States v. Stoecker, 920 F. Supp. at 883; United States

- 25 -

v. Jackson, 850 F. Supp. at 1493.  It has even provided the "document[] or specific evidence" it will use to introduce the bad acts.  United States v. Jackson, 850 F. Supp. at 1494.

The United States must also give a detailed explanation of how it intends to use the evidence at trial.  The United States' Notice does not explain exactly how the Estrada Letter will demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  It suggests only that "the letter strongly suggests that the defendant has *not* asserted a lack of opportunity, his intent was not to take the motor vehicle, that he is not the individual who committed the alleged offenses, or that a mistake occurred."  Notice ¶ 2(c), at 3 (emphasis in original).  Its original response at the hearing was similarly vague.  See Tr. at 6:3-7 (Hurtado).  The proponent must provide information to ensure that the "evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act."  United States v. Morley, 199 F.3d at 133.  The United States "must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts."  United States v. Kendall, 766 F.2d at 1436.  Brief references to "opportunity to commit the offense; knowledge of his alleged actions; and/or absence of mistake" will be insufficient.  Notice ¶ 1, at 1.

The United States eventually, however, articulated that the Estrada letter showed Folse's consciousness of guilt.  See Tr. at 6:17 (Hurtado).  This purpose is relatively clear.  Thus, Folse is on notice of the United States' planned introduction of the Estrada Letter and its intended purpose.

### B.   THE UNITED STATES CAN USE THE ESTRADA LETTER AS NON-PROPENSITY EVIDENCE.

Rule 404(b) does not bar the United States' proposed use of the Estrada Letter.  The Estrada Letter provides evidence of an "other act" within the meaning of rule 404(b)(1).  Fed. R.

Evid. 404(b)(1).   Although the United States concedes that the Letter was not "overt[ly] threatening," it adds that Estrada would likely "feel somewhat intimidated."   Tr. at 3:20-25 (Hurtado).  Sending a message, directly or indirectly, to a witness to ask him to "Go M.I.A." so that he cannot testify at a carjacking trial qualifies as a bad act even if it does not violate the witness intimidation statute, 18 U.S.C. § 1512(b)(1)-(2)(A).

To determine whether to admit other act evidence, the Court must determine that the proponent is offering the evidence for a proper purpose.  See United States v. Zamora, 222 F.3d at 762.  The Rule states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  The Tenth Circuit has distinguished this "propensity evidence" from the "*non-propensity evidence*" that rule 404(b)(2) covers.   United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

The United States' planned use of the Estrada Letter involves non-propensity evidence. The United States does not seek to show that Folse "did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, 2011 WL 6739166, at *5.  The United States will not use the Estrada Letter to show that Folse has a history of intimidating witnesses, has a poor character, and thus probably acted in accordance with that character by carjacking.  As the Court stated at the hearing, "it's more that [the United States is] trying to have the letter admitted to show consciousness of guilt of the crime that's being charged."  Tr. at 7:3-6 (Court).  See Tr. at 8:24-9:2 (Hurtado)("[T]he United States somewhat agrees with the Court that it's more properly admitted as an admission by a party opponent"); id. at 10:17-18 (Villa)(agreeing that the Estrada Letter "really isn't 404(b).").  The case is distinguishable from most decisions on rule 404(b).  The Court is not, for example,

considering whether to admit a prior drunk driving conviction at a trial for driving while intoxicated.  See United States v. Tan, 254 F.3d at 1204.

The Estrada Letter falls within the specific authorized purposes listed in Rule 408(b)(2).  The Tenth Circuit has noted that "matters such as motive, intent, plan, or knowledge essentially involve consciousness of guilt."  United States v. Esparsen, 930 F.2d 1461, 1476 n.16 (10th Cir. 1991)(Moore, J.).  Here, both the Court and the United States have noted that the Estrada Letter may reflect Folse's consciousness of guilt.  See Tr. at 9:6-7 (Hurtado); id. at 7:3-6 (Court).  In United States v. Smith, 629 F.2d 650 (10th Cir. 1980)(Seymour, J.), a prosecution witness testified that the defendant followed him in his car and made intimidating remarks and gestures.  See 629 F.2d at 651-52.  The Tenth Circuit held that "[e]vidence of threats to a prosecution witness is admissible as showing consciousness of guilt if a direct connection is established between the defendant and the threat, as it was here."  629 F.2d at 651-52.  See United States v. Swan, 494 F. App'x 838, 842 (10th Cir. 2012)(O'Brien, J.)(unpublished)(reaffirming rule that threats are relevant where there is a direct connection between the defendant and the threat).  A direct connection may encompass third parties who convey threats.  See United States v. Vazquez-Villa, 423 F. App'x 812, 817-18 (10th Cir. 2011)(considering a threat made by the defendant's relative).

### C.   FOLSE IS ENTITLED TO A LIMITING INSTRUCTION.

If the United States ultimately admits the Estrada Letter into evidence, Folse may request that the Court "instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted."  United States v. Zamora, 222 F.3d at 762.  Even direct threats against a prosecution witness must be considered "only . . . as proof of knowledge, not as evidence of a violent person likely to commit illegal acts."  United States v. Esparsen, 930

F.2d at 1476.  The Court will give an appropriate instruction to the jury if Folse drafts the material and requests that the Court give an instruction.

## III.  THE ESTRADA LETTER, IF AUTHENTICATED, IS NOT INADMISSIBLE HEARSAY BECAUSE IT IS A STATEMENT OF A PARTY OPPONENT.

Assuming the Estrada Letter is authenticated,[10] it qualifies as a party opponent's non-hearsay statement under rule 801(d)(2) of the Federal Rules of Evidence.  Again assuming the Estrada Letter's authenticity, Folse wrote it in his individual capacity and manifested it to be true.  See Fed. R. Evid. 801(d)(2)(A)-(B).  No "guarantee of trustworthiness" is required for a letter in Folse's handwriting, and he will have an opportunity to explain or deny his statements at trial.  Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 667.  The Court's ruling is consistent with the Tenth Circuit's instructions to apply a "generous treatment of this avenue of admissibility."  Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 667.

## IV.  THE ESTRADA LETTER IS ADMISSIBLE UNDER RULE 403 WITH LIMITED REDACTIONS.

Rule 403 does not require the Court to exclude the entire Estrada Letter.  "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."  United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)(Tacha, J.)(quotation omitted)(emphasis in original).

---

[10]The Court does not rule on whether the United States will be able to authenticate the Estrada Letter.  See Tr. at 22:15-16 (Court)("I would be inclined to admit it if they can lay a proper foundation for it.").  To admit the letter into evidence, the proponent must provide "prima facie evidence, either direct or circumstantial, that the document is what its proponent claims it is."  United States v. Ates, 896 F.2d 1370 (9th Cir. 1990)(per curiam)(unpublished).  See United States v. White, 444 F.2d 1274, 1280 (5th Cir. 1971)(Roney, J.)("There is no precise method by which a specimen must be proved to be genuine, and proof may be either direct or circumstantial.").  Once the proponent makes that showing, the "ultimate issue of their authorship and the probative weight to be afforded them is for the jury."  United States v. Am. Radiator & Standard Sanitary Corp., 433 F.2d 174 (3d Cir. 1970)(Seitz, J.).  As the Court noted at the hearing, it is more likely to admit the letter if the United States can provide the original letter and Creeper's authenticating testimony.  See Tr. at 21:7-13 (Court).

"Unfairly prejudicial" evidence has "an undue tendency to suggest decision on an improper basis

. . . ."  United States v. Caraway, 534 F.3d at 1301.

The introduction of threat evidence presents some risk of unfair prejudice.  See United

States v. Guerrero, 803 F.2d 783, 785 (3d Cir. 1986)(stating that threats are relevant, but

"constitute a striking example of evidence that appeals to the jury's sympathies, arouses its sense

of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on

something other than the established propositions in the case.").  The same opinion, however,

allowed that courts could consider mitigating factors such as "the nature or style of the specific

witness's narrative; the likelihood that the testimony is true; and the sufficiency of the other

evidence presented to make a reasonable connection between the defendant and the offense

charged."  803 F.2d at 786 (citations and quotations omitted).  These factors help to reduce the

danger of unfair prejudice here.  Assuming that the United States can authenticate the Estrada

Letter, the witness is the defendant himself.  The nature and style of the narrative are unlikely to

draw out emotional reactions.  Finally, there is sufficient alternative evidence, including

witnesses and the pistol, to draw a reasonable connection between Folse and the offense charged.

Folse argues, however, that the Estrada Letter contains statements that could be unfairly

prejudicial.  See Tr. at 1:9-15.  He points to the Estrada Letter's reference to the "concrete

Cadillac," "career kriminal [sic]," and his presence "in segregation under investigation 23 hour

lockdown."  Estrada Letter at 1-2.  The United States appears willing to "perhaps stipulate to

certain redaction[s] as to that letter to avoid any possible 403 issues."  Tr. at 2:1-5 (Hurtado).

The Court has directed Folse to send the United States "a redacted copy [of the Estrada

Letter] and see if they can live with it."  Tr. at 21:18-21 (Court).  If Folse and the United States

cannot reach an agreement, the Court will examine the disputed portions piece by piece to

- 30 -

determine what must be redacted to prevent any unfair prejudice.  See Tr. at 21:21-23.  The Court will keep in mind, however, that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d at 787.

IT IS ORDERED that: (i) the requests in Plaintiff United States' Sealed Notice of Intent to Introduce Evidence Pursuant to Rule 404(b) and Request for Pretrial Ruling on the Government's Request to Admit Evidence, filed September 25, 2015 (Doc. 62), are granted in part and denied in part; and (ii) Defendant Kevin Folse's Objection to United States' Rule 404(b) Notice, filed September 28, 2015 (Doc. 69), is overruled in part and sustained in part.  The Court will admit a redacted version of the Estrada Letter if the United States introduces prima facie evidence, either direct or circumstantial, that the Estrada Letter is what the United States claims it is.

_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Damon P. Martinez
   United States Attorney
William J. Pflugrath
Samuel A. Hurtado
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Ryan J. Villa
Albuquerque, New Mexico

      *Attorney for the Defendant*