# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

     Plaintiff,

vs.                                       No. CR 15-2485 JB

KEVIN FOLSE

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Kevin Folse's Formal Objections to Presentence Report, filed May 15, 2017 (Doc. 223)("Objections"). The primary issues are: (i) whether Defendant Kevin Folse qualifies for a "career offender" sentencing enhancement under U.S.S.G. § 4B1.1 based on his prior felony convictions for aggravated battery with a deadly weapon and possession of marijuana with intent to distribute, as well as the two carjacking convictions rendered in this case; (ii) whether the Court should apply a 2-level obstruction-of-justice enhancement for witness intimidation under U.S.S.G. § 3C1.1; and (iii) whether the Court should apply a 2-level obstruction-of-justice enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. The Court concludes that all three enhancements apply. First, Folse qualifies as a career offender, because his carjacking conviction in this case is a "crime of violence" under U.S.S.G. § 4B1.2(a), his prior aggravated battery with a deadly weapon conviction was a "crime of violence" under U.S.S.G. 4B1.2(a), and his prior possession of marijuana with intent to distribute conviction is a controlled substance offense under § 4B1.2(b). Second, Folse qualifies for the obstruction-of-justice enhancement, because he asked "Creeper" to tell a potential witness to go "M.I.A." prior to trial. Third, he qualifies for the obstruction-of-justice reckless-endangerment-

during-flight enhancement, because Folse put pedestrians and other drivers at substantial risk of serious injury or death while fleeing police when he threw a gun out of a moving vehicle, drove at high speeds, and ran both a red light and a stop sign.

## FACTUAL BACKGROUND

The Court takes its factual account from the Presentence Investigation Report, filed May 10, 2017 (Doc. 220)("PSR"). Later, the Court will note Folse's factual objections and, where necessary to determine whether the disputed sentencing enhancements apply, the Court will resolve them.

Between June 30 and July 2, 2015, Albuquerque Police Department ("APD") detectives searched for Folse, a.k.a. "Criminal," who was fleeing from law enforcement and had "committed various violent crimes" during flight. PSR ¶ 5, at 4. On July 2, 2015, APD officers stopped a stolen black Cadillac, which Folse "had been driving a few hours earlier."[1] PSR ¶ 6, at 4. Although the officers determined that Folse was not the driver, the driver stated that he had just purchased the vehicle from Folse and that Folse was located at 1825 Pitt Street NE in Albuquerque, New Mexico. See PSR ¶ 6, at 4. APD dispatched officers to the residence, where they observed an individual matching Folse's description close the front door. See PSR ¶ 7, at 4. The officers failed, however, to positively identify the man. See PSR ¶ 7, at 4. An APD detective then proceeded to the back of the residence and observed an individual -- later identified as Valente Estrada -- looking out the back

---

[1]The PSR, in its discussion of "Offense Behavior Not Part of Relevant Conduct," states that Folse stole the Cadillac on June 30, 2015, during a staged meet-up with the vehicle's owner, who had listed the vehicle for sale in an online advertisement, to take it for a test-drive. PSR ¶ 50, at 10. A few hours later, an APD officer located the stolen Cadillac and initiated a traffic stop. See PSR ¶ 51, at 10. As the officer approached the driver's side of the vehicle, he drew his service weapon and "gave verbal commands for the driver to exit the vehicle." PSR ¶ 51, at 10. When the driver -- later identified as Folse -- saw the officer, he "accelerated through the intersection[,] running a red light [and] almost striking the officer." PSR ¶ 51, at 10. A vehicle pursuit ensued, but "was discontinued for safety reasons." PSR ¶ 51, at 10.

window.  See PSR ¶ 7, at 4.  Estrada said the front door was "barricaded" and that he was alone in the residence.  PSR ¶ 8, at 5.

Shortly thereafter, the man first observed at the front door -- later identified as Folse -- "had [Estrada] join four other individuals in the bedroom with Angela Murray," Folse's girlfriend,[2] where Folse "proceeded to take all of their cellular telephones and remove[] their batteries . . . ."  PSR ¶ 8, at 5.  Estrada "observed that Folse had both a knife and a handgun in his possession."  PSR ¶ 8, at 5.  To help "ease the tension," Estrada offered Folse and the others marijuana and methamphetamine.  PSR ¶ 9, at 5.  After consuming the methamphetamine, Folse threatened to stab one of the individuals and to hold "everyone in the room at gunpoint for seven hours."[3]  PSR ¶ 9, at 5.  Tensions were high, because Murray had challenged Folse to prove that he had not "been with any of the women in the house[.]"  PSR ¶ 10, at 5.  In response to this challenge, Folse "pulled out his gun and started pistol-whipping one of the females in the home."  PSR ¶ 10, at 5.

Folse eventually decided to leave the residence, but, before leaving, Folse ordered Estrada to hand over the keys to his 2002 silver Saturn passenger vehicle.  See PSR ¶ 11, at 5.  Estrada complied with Folse's order, fearing that he "had no choice . . . based on the continuous threats and acts of violence against him."  PSR ¶ 11, at 5.  Folse and Murray then exited the house, and ordered Estrada and one of Murray's female friends into the Saturn.  See PSR ¶ 11, at 5.  Estrada and the friend "did not feel they had a choice but to go with Folse . . . ."  PSR ¶ 11, at 5.

_____

[2]Murray was initially a co-Defendant in this matter.  See Superseding Indictment ¶ 2, at 2, filed September 10, 2015 (Doc. 31)("Superseding Indictment").  The Court severed the two matters on September 29, 2015.  See Order Granting Defendant Kevin Folse's Motion to Sever Defendants, filed September 29, 2015 (Doc. 72).

[3]The PSR acknowledges that "[t]estimony at trial did not explain what happened inside the residence at Pitt prior to [Estrada] coming home[,] or why Folse was holding three persons at gunpoint inside the home."  PSR ¶ 9, at 6.

APD received information that Folse had departed the house in a silver Saturn.  <u>See</u> PSR ¶ 12, at 5.  Officers soon caught up to the Saturn and attempted to conduct a traffic stop; Folse refused to yield, however, and, during the ensuing flight, threw a semiautomatic pistol from the vehicle.  <u>See</u> PSR ¶ 12, at 5.  Folse eventually lost control of the vehicle and "crashed violently, rolling the car onto its roof."  PSR ¶ 13, at 6.  As APD arrived on the scene, "the vehicle was still spinning and four individuals emerged from the broken windows."  PSR ¶ 13, at 6.

Folse and Murray fled on foot.  <u>See</u> PSR ¶ 13, at 6.  As they entered a residential street, they came upon a 2008 Kia Sorrento sitting in a driveway with the engine running.  <u>See</u> PSR ¶ 14, at 6.  Folse opened the driver-side door and told Michael B., a juvenile sitting in the passenger seat, that he had "three seconds to get out."  PSR ¶ 14, at 6.  Michael B. complied with Folse's order, but as Michael B. was exiting the car, Folse backed the car out of the driveway and clipped Michael B.'s left shoulder with the open car door.  <u>See</u> PSR ¶ 14, at 6; <u>id.</u> ¶ 16, at 6.  In an interview and later at trial, Michael B. testified that Folse had a firearm; immediately after the incident, however, he told a 911 operator that Folse did not have a firearm.  <u>See</u> PSR ¶ 14, at 6; <u>id.</u> ¶ 16, at 6.

APD officers later located the Kia Sorrento and recognized Folse as the driver.  <u>See</u> PSR ¶ 15, at 6.  When the officers attempted another vehicle stop, Folse again failed to yield.  <u>See</u> PSR ¶ 15, at 6.  "A vehicle pursuit ensued, but was discontinued due to the reckless driving by Folse."  PSR ¶ 15, at 6.  Folse eventually abandoned the Kia Sorrento on Interstate 40, hopped the freeway retaining wall, and "ran towards a business complex where he was able to get a ride out of the area."  PSR ¶ 15, at 6.

The next day, on July 3, 2015, APD located Folse at a Seven-Eleven store in Albuquerque.  <u>See</u> PSR ¶ 17, at 6.  When officers attempted to arrest Folse, he fled the scene in a stolen 1999 Ford

F-150 truck.[4]  See PSR ¶ 17, at 6.  A vehicle pursuit again ensued, but "officers disengaged from the chase because Folse was putting the public at risk of being harmed."  PSR ¶ 17, at 6.  Later that day, Isleta Pueblo Police Department officers observed the Ford F-150 truck parked at the Isleta Casino outside Albuquerque.  See PSR ¶ 17, at 6.  After reviewing security tapes, officers confirmed that Folse was in the Casino.  See PSR ¶ 17, at 6.  When Folse exited Isleta Casino, officers arrested him without incident.  See PSR ¶ 17, at 6.  The keys to the stolen F-150 were in his pocket.  See PSR ¶ 17, at 6.

In September 2015, Folse wrote a letter to a friend known as "Creeper," asking him "to do what he could in assuring that [Estrada] would not show up to testify."  PSR ¶ 18, at 6.  "The letter was given to [Estrada] who then gave it to law enforcement."  PSR ¶ 18, at 6-7.

## PROCEDURAL BACKGROUND

On July 14, 2015, a grand jury indicted Folse for: (i) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I); (ii) carjacking a silver Saturn, in violation of 18 U.S.C. § 2119 (Count II); and (iii) using, carrying, and brandishing a firearm in relation to and in furtherance of a crime of violence, i.e., carjacking the Saturn, in violation of 18 U.S.C. § 924(c) (Count III).  See Indictment at 1-2, filed July 14, 2015 (Doc. 10)("Indictment").  On September 9, 2015, a grand jury returned a Superseding Indictment.  See Superseding Indictment at 1.  The Superseding Indictment preserves the original Indictment's three counts and adds two new counts.  Count IV charges Folse with carjacking a 2008 Kia Sorrento, in violation of 18 U.S.C. § 2119, see Superseding Indictment ¶ 4, at 3, and Count V charges Folse with using, carrying, and

---

[4]The PSR, in its discussion of "Offense Behavior Not Part of Relevant Conduct," states that Folse stole the F-150 on July 1, 2015, while the vehicle's owner was inside a convenience store. PSR ¶ 52, at 10.  The owner had left the keys in the ignition and the engine running.  See PSR ¶ 52, at 10.  The next day, on July 2, 2015, Folse was observed driving the F-150.  See PSR ¶ 52, at 10.

brandishing a firearm in relation to and in furtherance of a crime of violence, i.e., carjacking the Kia Sorrento, in violation of 18 U.S.C. § 924(c), see Superseding Indictment ¶ 5, at 3.  Plaintiff United States of America later dismissed Count V, because it obtained evidence that Folse did not use a firearm in the second alleged carjacking.  See United States' Unopposed Motion to Dismiss Count Five of the Superseding Indictment ¶¶ 5-9, at 3, filed October 1, 2015 (Doc. 83).  On October 8, 2015, following a three-day trial, a jury convicted Folse on all four remaining counts.  See Verdict at 1, filed October 8, 2015 (Doc. 105).

The United States Probation Office ("USPO") filed a Presentence Investigation Report on May 10, 2017.  PSR at 1.  In the PSR, the USPO notes that, with respect to the violation of 18 U.S.C. § 924(c) in Count III, U.S.S.G. § 2K2.4 provides that the guideline sentence is a minimum seven-year term of imprisonment.  See PSR ¶¶ 25-26, at 7-8.  The PSR then groups Counts I and II for guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(c).  See PSR ¶ 27, at 8.  For these two counts, the PSR calculates an adjusted offense level of 30, including a base offense level of 20, a 4-level enhancement under § 2B3.1(4)(A) for abduction of Estrada, a 2-level enhancement under § 2B3.1(b)(5) for carjacking the Saturn, a 2-level obstruction-of-justice enhancement under § 3C1.1 for witness intimidation, and a 2-level enhancement under § 3C1.2 for reckless endangerment during flight.  See PSR ¶¶ 28-35, at 8.  Regarding Count IV, the PSR calculates an adjusted offense level of 24, including a base offense level of 20, a 2-level enhancement under § 2B3.1(b)(5) for carjacking the Kia Sorrento, and a 2-level obstruction-of-justice enhancement under § 3C1.2 for reckless endangerment during flight.  See PSR ¶¶ 36-41, at 9.  Given the multiple counts of conviction, the PSR calculates a combined adjusted offense level of 31.  See PSR ¶¶ 42-45, at 9.

Finally, the PSR notes that Folse is a career offender under § 4B1.1(a), because (i) he was at least eighteen years old when he committed the two federal carjackings; (ii) those carjackings are

crimes of violence; and (iii) he has at least two prior felony convictions for a crime of violence or a controlled substance offense. See PSR ¶ 46, at 9. See also PSR ¶ 115, at 26 (noting that Folse has prior felony convictions for possession of marijuana with intent to distribute and aggravated battery with a deadly weapon). The PSR accordingly calculates a criminal history category of VI under § 4B1.1(b). See PSR ¶ 62, at 14. The PSR provides, however, that the total offense level remains 31, because, under § 4B1.1(b), "if the offense level that is otherwise applicable is greater than the offense level listed in the table," the Court should "use the otherwise applicable offense level." PSR ¶ 47, at 9. The PSR notes that, here, the otherwise applicable offense level -- 31 -- is greater than the offense level listed in the table. See PSR ¶ 47, at 9. The PSR adds that, pursuant to § 4B1.1(c), the applicable guideline range for a career-offender defendant convicted under 18 U.S.C. § 924(c) is determined as follows:

> In the case of multiple counts of conviction, the guideline range shall be the greater of (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) to the minimum and maximum of the otherwise applicable guideline range, which results in a range of 272 months to 319 months; and (B) the guideline range determined using the table in U.S.S.G. § 4B1.1(c)(3), which is 360 months to life.

PSR ¶ 47, at 9-10. The PSR concludes that, "[s]ince it is the greater of the two options, the guideline range shall be determined under 4B1.1(c)(3)." PSR ¶ 47, at 9. Thus, the PSR calculates a guideline imprisonment range of 360 months to life. See PSR ¶ 97, at 23. The PSR notes, however, that, if he were not a career offender, Folse's total offense level of 31 and criminal history category of VI would yield a guideline imprisonment range of 188 to 235 months, plus a consecutive 84-month term for the 18 U.S.C. § 924(c) violation in Count III, resulting in an effective guideline range of 272 to 319 months. See PSR ¶ 97, at 23.

1.     **Folse's Objections to the PSR.**

Folse filed his formal objections to the PSR on May 15, 2017. See Objections at 1. Folse

makes three primary objections. See Objections at 2-22. First, Folse argues that the career offender enhancement under § 4B1.1(a) does not apply, because (i) his prior felony conviction for aggravated battery with a deadly weapon is not a "crime of violence" under § 4B1.2(a); (ii) his prior conviction for possession of marijuana with intent to distribute should not be considered a "controlled substance offense" under § 4B1.2(b); and (iii) the carjackings for which he was convicted in this case do not constitute crimes of violence under § 4B1.2(a). See Objections at 2-17. Second, Folse contends that the 2-level obstruction-of-justice enhancement under § 3C1.2 for reckless endangerment during flight is not warranted, because his driving, while admittedly unsafe, was not "reckless" as § 3C1.2 requires. Objections at 18-19. Third, Folse avers that the 2-level obstruction-of-justice enhancement under § 3C1.1 for witness intimidation is not warranted, because he did not "threaten, intimidate, or unlawfully influence" a witness, nor did he enlist "Creeper" to do so. Objections at 19-22. In light of these objections, Folse disputes the PSR's guideline imprisonment calculation, and proffers an alternative calculation. See Objections at 23-24. Finally, Folse objects to several factual statements in the PSR. See Objections at 24-27. The Court discusses all these objections in turn.

### a. Objections to the "Career Offender" Enhancement.

For context, Folse begins by noting that a "defendant who qualifies for the Career Offender enhancement faces a significantly longer sentence of imprisonment than one who does not." Objections at 3. He notes that, "[r]egardless of a career offender's actual criminal history category, the Guidelines assign him the highest possible Criminal History Category: Category VI." Objections at 3 (citing U.S.S.G. § 4B1.1(b)). Moreover, he notes, the "Career Offender guideline is particularly onerous for a defendant convicted under 18 U.S.C. § 924(c)," because it imposes a guideline range of 360 months to life for such offenders. Objections at 3. Here, he asserts, neither his conviction for

aggravated battery with a deadly weapon, nor his conviction for possession of marijuana with intent to distribute, justify the career offender enhancement.  See Objections at 3-4.

First, Folse argues that his felony conviction for aggravated battery with a deadly weapon is not a "crime of violence" under § 4B1.2(a).  Objections at 4.  Section 4B1.2(a), he notes, defines "crime of violence" as an offense punishable by a term of imprisonment exceeding one year that (i) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or (ii) is one of several enumerated offenses.  Objections at 2.[5]  He argues that, because his conviction is not an enumerated offense under § 4B1.2(a)(2), it can "only trigger application of the Career Offender guideline . . . [if it] 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'"  Objections at 4 (quoting U.S.S.G. § 4B1.2(a)(1)).  Although he admits that courts in the United States District of New Mexico have concluded that "New Mexico aggravated battery constitutes a 'crime of violence,'" he contends that "there is no controlling law on this point from the Tenth Circuit."  Objections at 4.  Moreover, he contends, "there are compelling reasons" to conclude that his aggravated battery conviction "should not qualify as a crime of violence because it does not satisfy the 'force clause.'"  Objections at 4.  He supports this argument by discussing his aggravated battery charge, New Mexico aggravated battery law, and § 4B1.2's "force clause."  Objections at 4-13.

Folse initially notes that, in 2008, he pled no contest to a charge that he

did touch or apply force to Bronson Sanchez, with a handgun, an instrument or object which, when used as a weapon, could cause death or great bodily harm, intending to injure Bronson Sanchez, or another, and used a firearm, contrary to Section 30-3-5(A) & (C) and Section 31-18-16 NMSA 1978.

---

[5]Folse notes that § 4B1.2(a) was recently amended to eliminate language resembling the "residual clause" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), which the Supreme Court of the United States of America invalidated as unconstitutionally vague in Johnson v. United States, 135 S. Ct. 2551 (2015).  Objections at 2.

Objections at 4 (citation omitted). He then notes that aggravated battery in New Mexico "consists of the unlawful touching or application of force to the person of another with intent to injure," and that such battery is a third-degree felony if it "inflict[s] great bodily harm" or is committed "with a deadly weapon" or "in any manner whereby great bodily harm or death can be inflicted . . . ." Objections at 5 (emphases omitted)(citing N.M. Stat. Ann. § 30-3-5(A), (C)). Folse notes that a "deadly weapon," in turn, is defined as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm," Objections at 5 (emphasis omitted)(citing N.M. Stat. Ann. § 30-1-12(B)), and argues that this definition applies to "'offenses involving both use and possession of deadly weapons,'" Objections at 5 (quoting <u>United States v. Silva</u>, 608 F.3d 663, 670 (10th Cir. 2010)(emphasis omitted)). Thus, Folse contends, "an *unloaded* firearm[] automatically count[s] as a deadly weapon," but, "because 'firearm' is listed under Section 30-1-12(B), the charge of aggravated battery with a firearm as a deadly weapon <u>does not</u> require any showing that the firearm (loaded or unloaded) 'could cause death or bodily harm.'" Objections at 5-6 (emphases in original)(quoting <u>State v. Murillo</u>, 2015-NMCA-046, ¶ 21, 347 P.3d 284, 291). Essentially, he explains, firearms "are separated by a semicolon in Section 30-1-12(B) from the listed weapons 'include[d]' in the definition of instruments 'capable of producing death or great bodily harm,' and therefore firearms . . . are not defined by Section 30-1-12(B) as *per se* 'capable of producing death or great bodily harm.'" Objections at 6. In support of this argument, he notes that the Court of Appeals of New Mexico has concluded that "'Section 30-1-12(B) expressly designates unloaded firearms to be deadly weapons as a matter of law, regardless of their manner of use in any particular crime.'" Objections at 6 (quoting <u>State v. Fernandez</u>, 2007-NMCA-091, ¶ 12, 164 P.3d 112, 115)(emphasis omitted).

Extrapolating from this analysis, Folse argues that aggravated battery with great bodily harm "is a distinct crime from" aggravated battery with a deadly weapon. Objections at 7. He argues that, "[u]nlike aggravated battery with great bodily harm, aggravated battery with a deadly weapon does not have as an element the intent to injure (and in fact actually injuring) in a way likely to result in death or great bodily harm." Objections at 7 (emphases, footnote, and citations omitted). Here, he argues, he "was not convicted of a crime containing as an element the intent to injure 'in a way that would likely result in death or great bodily harm.'" Objections at 7. His conviction's elements, he notes, include: (i) unlawful touching or application of force to another; (ii) with intent to injure; and (iii) with a firearm. See Objections at 7.

Turning to his objection to the § 4B1.1 enhancement, Folse argues that his prior aggravated battery conviction is not a "crime of violence," because the crime's elements "do not necessarily involve the 'use, attempted use, or threatened use of physical force against the person of another.'" Objections at 8 (quoting U.S.S.G. § 4B1.2(a)(1)). He contends that "physical force" in this context means "'*violent* force -- that is, force capable of causing physical pain or injury to another person.'" Objections at 10 (emphasis in original)(quoting Johnson v. United States, 559 U.S. 133, 140 (2010)("Johnson I")). He concludes that, given this analysis, "a careful examination of recent decisions finding that New Mexico's crime of aggravated battery with a deadly weapon does qualify as a 'crime of violence' actually demonstrates why this offense should *not* constitute a crime of violence." Objections at 8 (emphasis in original). He notes, for example, that the Honorable James A. Parker, Senior United States District Judge, recently concluded that aggravated battery with a deadly weapon is a crime of violence. See Objections at 8 (citing Vasquez v. United States, 2017 U.S. Dist. LEXIS 4135, at *12 (D.N.M. 2017)(Parker, J.)). He argues that Judge Parker based this conclusion on two recent United States Court of Appeals for the Tenth Circuit cases holding that

aggravated <u>assault</u> with a deadly weapon constitutes a crime of violence.  <u>See</u> Objections at 8 (relying on <u>United States v. Mitchell</u>, 653 F. App'x 639 (10th Cir. 2016); <u>United States v. Ramon Silva</u>, 608 F.3d 663 (10th Cir. 2010)).  Those cases, he avers, "focus on the 'threat' of physical force in determining that the statutes at issue necessitated '*violent* force[.]'"  Objections at 8 (emphasis in original).  He notes that New Mexico state courts, by contrast, "have held that it is possible to commit battery without threatening a person."  Objections at 10 (citing <u>State v. Branch</u>, 2016-NMCA-071, ¶ 27, 387 P.3d 250, 258).  Thus, he argues, "the logic employed in *Mitchell* and *Silva* -- which focuses on a threat of force -- does not translate to New Mexico aggravated battery with a deadly weapon."  Objections at 10.  Similarly, he avers, the Tenth Circuit's decision in <u>United States v. Maldonado-Palma</u>, 839 F.3d 1244 (2016), holding that aggravated assault with a deadly weapon is a crime of violence, is inapposite, because: (i) unlike that crime, aggravated battery with a deadly weapon "does not require 'use' of a deadly weapon," but rather that a defendant "touch[] a person 'with' a firearm or deadly weapon," Objections at 12; and (ii) a defendant can "commit aggravated battery without also committing aggravated assault," Objections at 13 (citation omitted).

Second, Folse argues that his prior felony conviction for possession of marijuana with intent to distribute "should not qualify as a 'controlled substance offense'" under § 4B1.2(b).  Objections at 13.  He notes that, in 2007, he pled guilty to possession of marijuana with intent to distribute, a fourth-degree felony under N.M. Stat. Ann. § 30-31-22(A)(1), and that he received a suspended eighteen-month sentence, with eighteen months unsupervised probation.  <u>See</u> Objections at 13-14.  He concedes that "technically this offense of conviction meets the definition of 'controlled substance offense' under § 4B1.2(b)," but contends that "there are compelling policy reasons as to why this offense should not be used to trigger an enhancement as severe as the Career Offender guideline."  Objections at 14.  He argues, first, that, "in New Mexico, a first offense of possession with intent to

distribute marijuana is treated as the lowest degree of felony, so low that it is treated the same as simple possession (eight ounces or more) of marijuana." Objections at 14 (citing N.M. Stat. Ann. § 30-31-22(A)(1); N.M. Stat. Ann. § 30-31-23(B)(3)). Second, he contends that "marijuana is now legal under state law for recreational purposes" in several states and that it is legal "for medical purposes in multiple other states, including New Mexico." Objections at 14 (citing N.M. Stat. Ann. § 23-2B-1). He contends that he "suffers from a medical condition . . . which would qualify him for lawful medical marijuana use under this law," although he concedes that there is no evidence that he "applied for or obtained a New Mexico medical marijuana card[.]" Objections at 14-15. Nevertheless, he asserts, it would be "unfair to use this relatively minor offense -- which punishes conduct that could have been legal as to him -- to significantly enhance his sentence." Objections at 15. Third, he says that the Court has distinguished "between controlled substance offenses involving possession of marijuana" and "other substances such as narcotic drugs." Objections at 15. He notes, for example, that, in United States v. Rodriguez, 147 F. Supp. 1278 (D.N.M. 2015)(Browning, J.), the Court criticized a "trend in the United States of inconsistent enforcement of federal marijuana laws," and concluded that the defendant, charged with possession of fifty kilograms or more of marijuana with intent to distribute, did not pose a "danger to the community." Objections at 15 (quoting United States v. Rodriguez, 147 F. Supp. at 1281)(internal quotation marks omitted).

Finally, Folse argues that his "instant convictions for carjacking do not constitute a crime of violence for purposes of the Career Offender enhancement." Objections at 17. He notes that, for the § 4B1.1 enhancement to apply, the "instant offense of conviction must meet the definition of 'crime of violence' or 'controlled substance offense' under the guideline." Objections at 16. The Tenth Circuit, he contends, has not yet decided whether "federal carjacking is determined to be a crime of violence under the 'force clause' of § 4B1.2." Objections at 16. He admits that the Tenth Circuit

has held that "federal carjacking constitutes a crime of violence under 18 U.S.C. § 924(c)(3) because it 'carries with it a substantial risk of the use of physical force.'" Objections at 16 (quoting United States v. Brown, 200 F.3d 700, 706 (10th Cir. 1999)). He contends, however, that "this language is akin to the 'residual clause' language that was deleted from the Career Offender guideline in the August 1, 2016 amendment to the Guidelines, and therefore, cannot be used as a basis for application of the guideline to Mr. Folse." Objections at 16. Moreover, he argues, although the Career Offender guideline's "enumerated offenses" provision includes "robbery," the Tenth Circuit has concluded that "robbery and carjacking are not identical offenses." Objections at 16 (citing United States v. Rushing, 210 F. App'x 767, 770 (10th Cir. 2006)). Last, he contends that carjacking is not a crime of violence, because it "may be committed by 'intimidation,' rather than by force and violence." Objections at 17 (quoting United States v. Malone, 222 F.3d 1286, 1291 (10th Cir. 2000)). Thus, he concludes, carjacking "may be accomplished without the 'use, attempted use, or threatened use of physical force against the person of another.'" Objections at 17 (quoting U.S.S.G. § 4B1.2(a)).

### b. Objections to the Obstruction-of-Justice Enhancement for Reckless Endangerment.

Turning to the PSR's obstruction-of-justice enhancement for reckless endangerment, Folse notes that § 3C1.2 "provides for a two-point enhancement 'if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.'" Objections at 18 (quoting United States v. Buckley, 2000 U.S. App. LEXIS 11799, at *11 (10th Cir. 2000)). Folse contends that the "risk" which the defendant creates must be such that to "'disregard that risk [would] constitute[] a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" Objections at 18 (quoting United States v. Buckley, 2000 U.S. App. LEXIS 11799, at *11). Folse further contends that "'[t]he standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal

suspect.'" Objections at 18 (quoting <u>United States v. Buckley</u>, 2000 U.S. App. LEXIS 11799, at *11-12).

Folse argues that, here, his conduct during the vehicle pursuits involving the Saturn and the Kia Sorrento was not "reckless" as § 3C1.2 defines that term. Objections at 19. Folse contends that there is no evidence that he "aimed either of the vehicles at anyone, or even came close to colliding with anyone . . . ." Objections at 19. Folse contends that the evidence indicates, "[a]t most, . . . [that he] drove in excess of the speed limit and ran one stop sign and one red light." Objections at 19. As to the Saturn, Folse concedes that his "excess speed resulted in the [] vehicle . . . flipping over on a sharp curve," but emphasizes that "no injuries were reported." Objections at 19. With respect to the Kia Sorrento, Folse concedes that he "accelerated very rapidly" and "drove in excess of the speed limit (possibly about 60 mph) and weaved in and out of traffic." Objections at 19. Folse argues that, although "these facts certainly do not paint a picture of particularly safe driving practices, and may rise to the level of negligence, it does not reflect a 'gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" Objections at 19.

### c. **Objections to the Obstruction-of-Justice Enhancement for Witness Intimidation.**

Turning next to the obstruction-of-justice enhancement for witness intimidation, Folse notes that § 3C1.1 provides a 2-level enhancement if (i) "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction"; and (ii) "the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct[,] or (B) a closely related offense[.]" Objections at 19-20 (quoting U.S.S.G. § 3C1.1)(internal quotation mark omitted). Folse emphasizes that the § 3C1.1 enhancement requires that the "defendant must have deliberately -- not accidentally, incidentally, or mistakenly -- done some act with the specific purpose of thwarting

the investigation and prosecution."  Objections at 20 (quoting United States v. Welbig, 2015 U.S. Dist. LEXIS 66185, at *59-60 (D.N.M. 2015)(Browning, J.)(citation omitted)).  Folse concludes that § 3C1.1 requires "extreme conduct."  Objections at 20.

Here, Folse contends, the letter to Creeper did "not threaten, intimidate, or unlawfully influence" Estrada, nor did it "enlist 'Creeper' to do so."  Objections at 22.  Rather, Folse asserts, the letter "asks 'Creeper' to talk ('rap') to [Estrada] and tell him to 'go MIA' and 'chill for a while.'"  Objections at 22.  Folse contends that, "[a]t most, this language can be interpreted as asking an intermediary to suggest to a witness that the witness not appear in court."  Objections at 22.  Folse reasons that "[s]uch a suggestion could be motivated by a number of things, including a concern that the witness may not be truthful in his testimony and may intend to inculpate the defendant in order to exculpate himself."  Objections at 22.  In Folse's view, "[t]his conduct should not be deemed to rise to the level of obstruction so as to trigger this enhancement."  Objections at 22.

### d. Folse's Alternative Guideline Imprisonment Calculation.

In light of his objections to the career-offender enhancement and to the two obstruction-of-justice enhancements, Folse contends that the PSR improperly calculates his guideline imprisonment range at 272 to 319 months without the career-offender enhancement, and at 360 months to life with the career-offender enhancement.  See Objections at 23.  Folse argues that, without the objectionable enhancements, his offense level is 28.  See Objections at 23.  Folse further contends that his "actual criminal history score is seven (7), which yields a Criminal History Category of IV."  Objections at 23 (citing PSR ¶¶ 60-61, at 14).  Thus, Folse asserts, "[w]ith a criminal history category of IV, and an offense level of 28, Mr. Folse's guideline range would be 110-137 months."  Objections at 24.  Folse adds that, given the mandatory seven-year sentence for his conviction pursuant to 18 U.S.C. § 924(c), his effective guideline range is 194 to 221 months.  See Objections at 24.

### e.   **Folse's Factual Objections.**

Folse closes by noting his objections to several factual statements in the PSR which, he argues, lack support in evidence adduced either at trial or in investigative reports.  See Objections at 24-26.  First, he contends that there is no evidence that he "was observed driving a stolen black Cadillac on July 2, 2015 or at any time."  Objections at 24 (citing PSR ¶ 6, at 4).  Second, he objects to the PSR's assertion that someone "who matched the description of Folse" closed the front door at 1825 Pitt Street NE in Albuquerque, New Mexico, PSR ¶ 7, at 4, because "that person was never positively identified as Mr. Folse," Objections at 24.  Third, he asserts that there is no evidence that he held people "at gunpoint" inside the home.  Objections at 25 (citing PSR ¶ 9, at 5).  Fourth, he avers that the PSR's statements regarding his "pistol-whipping one of the females in the home," PSR ¶ 10, at 5, are irrelevant to determining his sentence, and says that, regardless, the statements should be excluded from the PSR pursuant to rule 32(d)(3)(C) of the Federal Rules of Criminal Procedure,[6] because the statements, if disclosed, "might result in physical or other harm to the defendant or others," Objections at 25.  Fifth, he objects to the statements that APD "confirmed that Folse was the driver" of the Saturn and that officers saw him throw a gun from the Saturn, PSR ¶ 12, at 5, because "no witnesses from APD testified that they observed and identified Mr. Folse as the driver of the Saturn," or that "they had seen Mr. Folse throw a gun from the Saturn," Objections at 25.  Sixth, he objects to the statement that people at the home were "kidnapped," PSR ¶ 13, at 6, because he "was never charged with or convicted of kidnapping, and the testimony adduced at trial does not establish the crime of kidnapping," Objections at 25.  Seventh, he objects to the statement that he pointed a gun at Michael B., because the United States "dismissed Count VI, the § 924(c) brandishing charge

_____

[6] Rule 32(d)(3)(C) states: "The presentence report must exclude . . . (C) any other information that, if disclosed, might result in physical or other harm to the defendant or others."  Fed. R. Crim. P. 32(d)(3)(C).

in connection with the second carjacking, based on the 911 audio recording in which M[ichael]" said that Folse did not have a gun. Objections at 25-26 (citing PSR ¶ 16, at 6). Eighth, he objects to the statement that he stole the Cadillac, because "he was never positively identified as the perpetrator of that crime." Objections at 26 (citing PSR ¶ 50, at 10). Last, he objects to the statements that he was identified as the driver of the Cadillac on June 30, 2015, and that he ran a red light and almost struck the APD officer, because "[t]he police reports corresponding to that incident do not contain a positive identification of Mr. Folse as the driver of that vehicle during that incident." Objections at 26 (citing PSR ¶ 51, at 10).

### 2. The USPO's Third Addendum.

The USPO responds to Folse's Objections by way of an addendum to the PSR. See Third Addendum to the Presentence Report at 1, filed May 10, 2017 (Doc. 222)("Third Addendum").[7] The USPO responds first to Folse's objection to the 2-level obstruction-of-justice enhancement for witness intimidation. See Third Addendum at 4-5. The USPO argues that the § 3C1.1 enhancement should apply, because Folse asked "Creeper" to "do what he could to assure that [Estrada] would not

---

[7]The USPO filed its first PSR on February 11, 2016, see Presentence Investigation Report, filed February 11, 2016 (Doc. 135), and, in response to informal objections by the United States, a revised PSR on February 29, 2016, see Presentence Investigation Report, filed February 29, 2016 (Doc. 139). On May 12, 2016, the USPO filed an addendum to the PSR, discussing terms of probation under 18 U.S.C. § 3563 and supervised release under 18 U.S.C. § 3583. See Addendum to the Presentence Report at 1, filed May 12, 2016 (Doc. 170). The USPO filed a second addendum on June 1, 2016, discussing interviews that the USPO conducted with Michael B., Michael B.'s father, and Michael B.'s grandmother. See Second Addendum to the Presentence Report at 1-2, filed June 1, 2016 (Doc. 178). On May 1, 2017, Folse informally objected to the PSR, and, in response to Folse's objections, on May 10, 2017, the USPO filed a second revised PSR -- the operative PSR from which the Court draws its facts in this Memorandum Opinion and Order -- as well as a Third Addendum to the PSR. See PSR at 1; Third Addendum at 1. Folse filed his formal Objections on May 15, 2017. See Objections at 1. In a fourth addendum to the PSR, the USPO explains that its Third Addendum is responsive to Folse's Objections. See Forth [sic] Addendum to the Presentence Report at 1, filed May 17, 2017 (Doc. 224). The Court discusses the USPO's Third Addendum in this section.

show up to testify."  Third Addendum at 4.  The USPO contends that Application Note (K) to § 3C1.1 provides that "threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction is obstruction."  Third Addendum at 4. Next, the USPO responds to Folse's objection to the 2-level obstruction-of-justice enhancement for reckless endangerment under § 3C1.2.  See Third Addendum at 4-5.  The USPO asserts that the § 3C1.2 enhancement should apply, because Folse "recklessly created a substantial risk of death or serious bodily injury . . . in the course of fleeing from" APD officers.  Third Addendum at 4.

Finally, the USPO responds to Folse's objection to the career-offender enhancement under § 4B1.1.  See Third Addendum at 5-6.  First, the USPO contends that Folse's prior conviction for possession of marijuana with intent to distribute qualifies as a "controlled substance offense," because it is a fourth-degree felony punishable by 18 months imprisonment.  Third Addendum at 5-6.  Second, the USPO asserts that Folse's prior conviction for aggravated battery with a deadly weapon qualifies as a "crime of violence."  Third Addendum at 6.  The USPO notes that, under § 4B1.2, an offense is a crime of violence if its "statutory definition contains any of the elements within the elements clause, which states, has the use, attempted use, or threatened  use of physical force against the person of another."  Third Addendum at 6.  The USPO contends that New Mexico aggravated battery meets this definition, because, under N.M. Stat. Ann. § 30-3-5(C), "a person commits aggravated battery when inflicting great bodily harm or does so with a deadly weapon or in the manner whereby great bodily harm or death can be inflicted."  Third Addendum at 6.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two

sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553:

"Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those

factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence

is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than

necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law,
>         and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training,
>         medical care, or other correctional treatment in the most effective
>         manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal
> statute . . . shall be sentenced in accordance with the provisions of this chapter so as
> to achieve the purposes set forth in subparagraphs (A) through (D) of section
> 3553(a)(2) to the extent that they are applicable in light of all the circumstances of
> the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the

Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences;

(iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the

need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth

Circuit have clarified that, while the Guidelines are only one of several factors enumerated in

§ 3553(a), they are entitled to substantial deference. See Rita v. United States, 551 U.S. 338, 349

(2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of

thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted). A reasonable sentence is also one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption and not one that the trial court can or should apply. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[8]

_____

[8]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory. Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at

46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

applicable Guidelines range.”).  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)(“[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . . ”).  Accord United States v. Chavez-Rodarte, 2010 WL 3075285, at *2-3 (D.N.M. 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).
>
> . . . .
>
> The Supreme Court held in United States v. Booker that “district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing,” 543 U.S. at 264, but further expounded in Kimbrough v. United States that “courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines,” 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis “variances.”  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if “the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence” (emphasis added)).

United States v. Nolf, 2014 WL 3377695, at *20-21 (D.N.M. 2014)(Browning, J.)(emphasis in original).

> While the Supreme Court's decision in <u>United States v. Booker</u> has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, 2008 WL 2229550, at *6 (D.N.M. 2008)(Browning, J.). The Supreme Court has noted, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." <u>Kimbrough v. United States</u>, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. <u>See</u> <u>United States v. Alemendares-Soto</u>, 2010 WL 5476767, at *12 (D.N.M. 2010)(Browning, J.). Still, in <u>United States v. Jager</u>, 2011 WL 831279 (D.N.M. 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted). In United States v. Booker, however, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi's* requirement.")(alterations and internal quotations marks omitted). More recently, the Supreme Court held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute, and to distribute, methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant

-- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." 408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[9]  "[T]he application of an enhancement . . . does not implicate the Supreme

---

[9]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a

Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 2014 WL 6679446, at *6 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[10] The Court has noted:

defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[10] United States v. Hendrickson, is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Hendrickson, United States v. Schmidt, United States v. Banda, United States v. Rushing, United States v. Sim, and United States v. Porter have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  See [<u>United States v. Sangiovanni</u>,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, cmt. 1(H).  In <u>United States v. Booker</u>, the Supreme Court noted:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's reasoning in <u>United States v. Booker</u> suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be determined" based on the following:

> (1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>       (B)   in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged

as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)     solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)     any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4). The court may consider, as relevant conduct, actions that have not resulted in a conviction. Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct. The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard. See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.). Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct comes primarily from two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997). In Witte v.

United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. See 515 U.S. at 404-06. The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and an attempt to import marijuana in 1991. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See 515 U.S. at 394.

In September 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990. See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. See 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals opinions, including the Tenth Circuit's, that had previously

considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit's judgment.  See 515 U.S. at 395.  In holding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." 515 U.S. at 401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." 515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149.  The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No

limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661). According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit case law adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts. See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause). In United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard." 168 F. App'x at 290. The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment. Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'" 168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime. See 947 F.2d at 1428. The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be

enhanced for firearms possession despite a defendant's acquittal on firearms charges.  See United

States v. Coleman, 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir.

1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by

the preponderance of the evidence that the weapon was possessed during the drug offense."); United

States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement

for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which

the defendant was found not guilty violates the constitutional principle of due process and the ban

against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make

factual findings, the Tenth Circuit held that the district court did not err in enhancing Coleman's

sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429.  The Tenth

Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons

at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the

weapons were kept for the protection of conspiracy participants and the narcotics involved.  See 947

F.2d at 1429.  The Tenth Circuit summarized that, in reviewing relevant federal case law, it found

"persuasive the decisions that have allowed a sentencing court to consider trial evidence that was

applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant, Patrick Washington, argued

that the United States should prove drug quantities used as relevant conduct to establish a

defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the

evidence.  See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity

that the district court considered as relevant conduct, and which the court found by a preponderance

of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison.

See 11 F.3d at 1515. The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." 11 F.3d at 1515. Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)). See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)(concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 2014 WL 6065657, at *14-15 (D.N.M. 2014)(Browning, J.)(cross referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has previously held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.). The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence. See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.).

<u>**ANALYSIS**</u>

The Court overrules Folse's Objections. First, the Court concludes that Folse is a "career offender" under § 4B1.1, because: (i) the federal carjackings for which he was convicted in this case are crimes of violence under § 4B1.2(a); (ii) his prior conviction for aggravated battery with a deadly weapon is a crime of violence under § 4B1.2(a); and (iii) his prior conviction for possession of marijuana with intent to distribute is a controlled substance offense under § 4B1.2(b). The Court thus concludes that Folse's criminal history category is VI and that, given his conviction under 18 U.S.C. § 924(c), the PSR correctly calculates his guideline imprisonment range at 360 months to life. Second, the Court imposes a 2-level enhancement under § 3C1.1, because Folse willfully obstructed and impeded the administration of justice when he sent a letter to "Creeper" instructing him to "do what he could" to prevent Estrada from testifying. Finally, the Court imposes a 2-level enhancement under § 3C1.2, because Folse recklessly created a substantial risk of death or serious bodily injury when he fled from APD officers in the silver Saturn and in the Kia Sorrento.

I.  **FOLSE IS A "CAREER OFFENDER" UNDER U.S.S.G. § 4B1.1, BECAUSE HIS CARJACKING CONVICTIONS IN THIS CASE ARE CRIMES OF VIOLENCE, AND BECAUSE HE HAS AT LEAST TWO PRIOR FELONY CONVICTIONS FOR <u>A CRIME OF VIOLENCE OR A CONTROLLED SUBSTANCE OFFENSE</u>.**

Section 4B1.1 provides an enhancement for defendants who qualify as "career offenders." U.S.S.G. § 4B1.1(c). A defendant is a career offender if: (i) he was at least eighteen years old at the time he committed the federal offense of conviction for which he is being sentenced; (ii) the federal offense of conviction is a felony that is either a "crime of violence" or a "controlled substance offense"; and (iii) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Here, Folse disputes that his federal convictions for carjacking under 18 U.S.C. § 2119 are "crimes of violence." Objections at 16-17. Folse also disputes that his prior conviction for aggravated battery with a deadly weapon is a

"crime of violence" and that his prior conviction for possession of marijuana with intent to distribute is a "controlled substance offense." Objections at 2-16. Folse therefore asserts that he is not a career offender under § 4B1.1. See Objections at 2. The Court disagrees with Folse, and will apply the career offender enhancement.

### A. FOLSE'S CARJACKING CONVICTIONS ARE "CRIMES OF VIOLENCE" UNDER U.S.S.G. § 4B1.2.

Under § 4B1.2, an offense qualifies as a "crime of violence" if it (i) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); or (ii) is one of the crimes that the guideline enumerates, including "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, [or] extortion" (the "enumerated-offense clause"). U.S.S.G. § 4B1.2(a)(1)-(2). At the time of Folse's conviction in this case, § 4B1.2 also stated that a "crime of violence" includes offenses which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). United States v. Thyberg, 2017 U.S. App. LEXIS 6189, at *1-2 (10th Cir. 2017)(discussing an earlier version of the Guidelines). In late 2016, however, in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015)("Johnson II"), which invalidated identical language in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) ("ACCA"), as unconstitutionally vague, § 4B1.2 was amended to excise the residual clause from the definition of "crime of violence," U.S.S.G. § 4B1.2 (App'x C, amend. 798).[11] An offense thus qualifies as a crime of violence under § 4B1.2 only if: (i) it meets the elements clause; or (ii) it is listed in the enumerated-offense clause.

---

[11]Before the 2016 amendment to § 4B1.2, the Tenth Circuit held that the residual clause is void for vagueness in light of the Supreme Court's decision in Johnson II. See United States v. Madrid, 805 F.3d 1204, 1207 (10th Cir. 2015), overruled in part by Beckles v. United States, 137 S. Ct. 886 (2017). In 2017, however, the Supreme Court decided that, contrary to the Tenth Circuit's holding in United States v. Madrid, § 4B1.2's residual clause is "not void for vagueness," because the advisory Guidelines are not subject to a due process vagueness challenge. Beckles v. United

At the outset, the Court notes that "carjacking" is not listed by name in the enumerated-offense clause. U.S.S.G. § 4B1.2(a)(2). Nor is carjacking a "robbery," because the two offenses "'require[] proof of a different element.'" United States v. Rushing, 210 F. App'x, 767, 770 (10th Cir. Dec. 13, 2006)(alteration in original)(unpublished)(quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). As the Tenth Circuit explained in United States v. Rushing, carjacking under 18 U.S.C. § 2119 requires proof (i) that the defendant "took a motor vehicle from the person or presence of another"; (ii) that he did so "by force, violence or intimidation"; (iii) that he "intended to cause death or serious bodily harm"; and (iv) "that the motor vehicle had been transported, shipped or received in interstate or foreign commerce." 210 F. App'x at 770 (citation omitted). Robbery under 18 U.S.C. § 1951, by contrast, requires proof of (i) "the taking of property from another against the person's will"; (ii) "the use of actual or threatened force, violence or fear of injury"; and (iii) "that the conduct obstructed, delayed, interfered with or affected commerce." 210 F. App'x at 770 (citation omitted). Thus, because carjacking is not a "robbery" under § 4B1.2(b)'s enumerated-offense clause, Folse's carjacking convictions are crimes of violence only if they meet § 4B1.2's elements clause.

To determine whether an offense fits within the elements clause, the Court uses "one of two methods of analysis: the categorical or modified categorical approach." United States v. Taylor, 843 F.3d 1215, 1220 (10th Cir. 2016)(citation omitted). "The categorical approach focuses solely on 'the elements of the statute forming the basis of the defendant's conviction.'" United States v. Taylor, 843 F.3d at 1220 (quoting Descamps v. United States, 133 S. Ct. 2276, 2281 (2013)). "The modified categorical approach applies when the statute is 'divisible'; that is, when it 'lists multiple, alternative

States, 137 S. Ct. at 892. Nevertheless, § 4B1.2's residual clause has been eliminated, and the Court is obligated to "use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11.

elements, and so effectively creates several different crimes.'" United States v. Taylor, 843 F.3d at

1220 (quoting United States v. Madrid, 805 F.3d at 1207 (Descamps v. United States, 133 S. Ct. at

2285)).  When applying the modified categorical approach, the Court may "consult a limited class of

documents, such as indictments and jury instructions, to determine which alternative [elements]

formed the basis of the defendant's [] conviction."  Descamps v. United States, 133 S. Ct. at 2281

(alterations added).  The Court then "compare[s] those elements to the crime of violence categories,

still focus[ing] only on the elements, rather than the facts, of a crime to determine whether it is

categorically a crime of violence under all circumstances."  United States v. Mitchell, 653 F. App'x

at 643 (first alteration added)(citations and internal quotation marks omitted).

Here, the Court must determine whether carjacking under 18 U.S.C. § 2119 is categorically a

crime of violence as defined by U.S.S.G. § 4B1.2(a)(1).  The carjacking statute provides that:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle
> that has been transported, shipped, or received in interstate or foreign commerce
> from the person or presence of another by force and violence or by intimidation, or
> attempts to do so, shall --
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title, including
> any conduct that, if the conduct occurred in the special maritime and
> territorial jurisdiction of the United States, would violate section 2241 or
> 2242 of this title) results, be fined under this title or imprisoned not more
> than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of
> years up to life, or both, or sentenced to death.

18 U.S.C. § 2119.  The Supreme Court has construed § 2119 as "establishing three separate offenses

by the specification of distinct elements . . . ."  Jones v. United States, 526 U.S. 227, 235-36 (1999).

Section 2119 is thus a "divisible" statute, i.e., it "lists multiple, alternative elements," thus creating

"different crimes."  Descamps v. United States, 133 S. Ct. at 2285.  That the statute is divisible,

however, is immaterial to the Court's analysis; here, Folse asserts that carjacking does not meet § 4B1.2's elements clause, because it may "be committed by 'intimidation,' rather than by force and violence." Objections at 17 (citation omitted). Because Folse's objection "focuses on the element of using 'force and violence' or 'intimidation,' which element is common to all three versions of the crime," the Court's analysis of this objection "appl[ies] equally to all three carjacking offenses." United States v. Evans, 848 F.3d 242, 246 n.3 (4th Cir. 2017).

Accordingly, the Court must determine whether carjacking "by force and violence or by intimidation," 18 U.S.C. § 2119, necessarily requires the "use, attempted use, or threatened use of violent physical force," U.S.S.G. § 4B1.2(a)(1). As used in § 4B1.2's elements clause, the statutory phrase "physical force" means "violent force," which necessarily "connotes a substantial degree of force." Johnson I, 559 U.S. at 140 (interpreting "violent felony" in the ACCA's elements clause). To qualify as "violent physical force," the degree of force employed must be "capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140. See United States v. Harris, 844 F.3d 1260, 1266 (10th Cir. 2017)(concluding that "physical force means violent force, or force capable of causing physical pain or injury to another person" under Johnson I). Here, Folse posits that carjacking "by intimidation" does not involve "violent physical force." Objections at 17. Folse asserts that, although the Tenth Circuit held in United States v. Brown that "carjacking constitutes a crime of violence . . . because it 'carries with it a substantial risk of the use of physical force,'" that decision is inapposite, because it "is akin to the 'residual clause' language that was deleted from the Career Offender guideline in the August 1, 2016 amendment . . . ." Objections at 16 (quoting United States v. Brown, 200 F.3d at 706).

Folse reads United States v. Brown too narrowly. In that case, the Tenth Circuit stated that "[t]he substantive offense of carjacking is always a crime of violence because § 2119 requires taking

or attempting to take a vehicle by force and violence or by intimidation, and the crime of carjacking carries with it a substantial risk of the use of physical force." United States v. Brown, 200 F.3d at 706 (citations omitted). Folse selectively quotes the latter clause, while omitting the former. See Objections at 16. It may be that the latter clause "is akin to the 'residual clause' language," as Folse contends. Objections at 16. The former clause, however, plainly concludes that § 2119's elements meet the "crime of violence" criteria, albeit under 18 U.S.C. § 924(c)(3)'s elements clause. United States v. Brown, 200 F.3d at 706 (interpreting 18 U.S.C. § 924(c)(3), which provides that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or if it falls under a residual definition). In other words, the Tenth Circuit stated in United States v. Brown that carjacking is a "crime of violence" under both § 924(c)(3)'s elements clause -- which is nearly identical to § 4B1.2's elements clause -- and § 924(c)(3)'s residual clause.

Regardless, the Court need not rely upon United States v. Brown to conclude that carjacking under 18 U.S.C. § 2119 is a "crime of violence" for purposes of the career-offender guideline. As the Court noted in Lloyd v. United States, 2016 U.S. Dist. LEXIS 118274 (D.N.M. 2016)(Browning, J.), "[t]he Courts of Appeals have uniformly ruled that federal crimes involving takings 'by force and violence, or by intimidation,' have as an element the use, attempted use, or threatened use of physical force." 2016 U.S. Dist. LEXIS 118274, at *13 (analyzing whether armed bank robbery is a crime of violence under 18 U.S.C. § 924(c)(3)). The Court reasoned that, while "[a] taking 'by force and violence' entails the use of physical force, . . . a taking by intimidation involves the threat to use such force." Lloyd v. United States, 2016 U.S. Dist. LEXIS 118274, at *14 (citing, e.g., United States v. Jones, 932 F.2d at 625)("Intimidation means the threat of force[.]"). Accordingly, the Court concluded that bank robbery "by force and violence" requires the

use of physical force, while bank robbery "by intimidation" requires the threatened use of physical force. Lloyd v. United States, 2016 U.S. Dist. LEXIS 118274, at *14.

The bank robbery statute at issue in Lloyd v. United States contains the identical "by force and violence, or by intimidation" phrase at issue here. Compare 18 U.S.C. § 2113(a), with id. § 2119. The Court thus concludes that the federal carjacking statute categorically qualifies as a "crime of violence" under § 4B1.2's elements clause, because it necessarily requires the "use, attempted use, or threatened use of violent physical force." U.S.S.G. § 4B1.2(a). While carjacking "by force and violence" requires the use of physical force, carjacking "by intimidation" requires the threatened use of physical force. Cf. United States v. Jones, 932 F.2d at 625 ("Intimidation means the threat of force[.]"); United States v. McGuire, 2017 U.S. App. LEXIS 1771, at *5 (10th Cir. 2017)(noting that federal crimes involving takings "by intimidation" involve "the threat of physical force")(citing, e.g., Lloyd v. United States, 2016 U.S. Dist. LEXIS 118274, at *5). Moreover, as several United States Courts of Appeals have held, the physical force used or threatened in a carjacking necessarily is "violent." United States v. Evans, 848 F.3d at 247 (holding that "'intimidation' [] in [the carjacking statute] means a threat of violent force"); In re Smith, 829 F.3d 1276, 1280 (11th Cir. 2016)(holding that "intimidation" in the carjacking statute necessarily means the threatened use of violent physical force). Accordingly, Folse is incorrect that carjacking "by intimidation" does not involve "violent physical force." Objections at 17. In light of the above analysis, the Court concludes that carjacking under § 2119 -- whether "by force and violence, or by intimidation" -- categorically is a "crime of violence" for purposes of the career-offender guideline.

### B. FOLSE'S PRIOR AGGRAVATED-BATTERY-WITH-A-DEADLY-WEAPON CONVICTION IS A "CRIME OF VIOLENCE" UNDER U.S.S.G. § 4B1.2.

Folse contends that his prior conviction under New Mexico law for aggravated battery with a deadly weapon is not a "crime of violence" under § 4B1.2, because the offense does "not necessarily

involve the 'use, attempted use, or threatened use of physical force against the person of another.'" Objections at 8 (quoting U.S.S.G. § 4B1.2(a)(1)). According to Folse, New Mexico law proscribes two distinct aggravated-battery felony offenses: (i) aggravated battery with a deadly weapon; and (ii) aggravated battery with great bodily harm. See Objections at 7. Folse argues that the latter offense necessarily requires "physical force" sufficient to satisfy § 4B1.2(a)(1) and that the former offense does not require such force. Objections at 7-8. Folse therefore concludes that his conviction for aggravated battery with a deadly weapon does not qualify as a predicate offense for purposes of the career-offender enhancement.

Aggravated battery, like carjacking, is not listed in § 4B1.2's enumerated-offense clause. The offense thus qualifies as a "crime of violence" only if it meets § 4B1.2's elements clause, i.e., if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). As the Court noted supra, "physical force" in this context means "violent force, or force capable of causing physical pain or injury to another person." United States v. Harris, 844 F.3d at 1266. To determine whether New Mexico aggravated battery has the requisite force element, the Court applies the "categorical approach," i.e., the Court looks at "the elements of the statute forming the basis of the defendant's conviction." Descamps v. United States, 133 S. Ct. at 2281. If New Mexico's aggravated battery statute is "divisible," i.e., if it lists multiple, alternative elements, thereby effectively creating several different crimes, United States v. Taylor, 843 F.3d at 1220 (citation omitted), the Court applies the "modified categorical approach" to determine "which alternative formed the basis of the defendant's prior conviction," Descamps v. United States, 133 S. Ct. at 2281 (alterations added). Under either approach, the Court must focus "only on the elements, rather than the facts, of [the] crime to determine whether it is categorically a crime of violence under all circumstances." United States v. Mitchell, 653 F. App'x at 643 (alteration added)(citations and

internal quotation marks omitted).  The Court thus turns to the text of New Mexico's aggravated battery statute.

> New Mexico's aggravated battery statute provides:
>
> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
>
> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
>
> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. Stat. Ann. § 30-3-5.  Subsection A articulates the "least culpable conduct criminalized" by the statute, United States v. Harris, 844 F.3d at 1268 n.9, i.e., the unlawful touching of another with the intent to injure that person, see N.M. Stat. Ann. § 30-3-5(A).  Arguably, such touching-with-intent-to-injure involves a threat of "force capable of causing physical pain or injury to another person." United States v. Harris, 844 F.3d at 1266.  See State v. Vallejos, 2000-NMCA-075, ¶ 18, 9 P.3d 668, 674-75 (noting that "[t]he aggravated battery statute is directed at preserving the integrity of a person's body against serious injury").  Under this line of reasoning, because the "least of the acts criminalized" by the statute has the requisite force element, Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013), New Mexico aggravated battery categorically fits within § 4B1.2's elements clause. Folse overlooks this reasoning; indeed, he implicitly assumes that subsection A does not necessarily require the threat of physical force sufficient to meet § 4B1.2(a)(1).  See Objections at 4-13.  Instead, Folse focuses on subsection C and contends that his conviction under that subsection does not qualify as a crime of violence.  See Objections at 4-13.  The Court finds this argument unpersuasive.

Because subsections B and C differentiate between misdemeanor offenses and third-degree felony offenses, the aggravated battery statute is divisible. See Mathis v. United States, 136 S. Ct. 2243, 2256 (2016)("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.")(citations omitted). Here, Folse was convicted of felony aggravated battery with a deadly weapon under subsection C. See PSR ¶ 59, at 13; Objections at 4. That subsection is itself divisible and can be violated by either: (i) committing aggravated battery and "inflicting great bodily harm"; (ii) committing aggravated battery "with a deadly weapon"; or (iii) committing aggravated battery "in any manner whereby great bodily harm or death can be inflicted." N.M. Stat. Ann. § 30-3-5(C). Subsection C's divisibility, however, is immaterial; as the Court has previously concluded, "any of the three ways to commit § 30-3-5C involves 'the use, attempted use, or threatened use of physical force against the person of another.'" United States v. Lopez-Valencia, Nos. CIV 10-0216 JB/KBM, CR 09-0111 JB (D.N.M. Aug. 26, 2010)(Browning, J.)(interpreting U.S.S.G. § 2L1.2's elements clause). In other words, § 30-3-5(C) does not contain "statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not," Johnson I, 559 U.S. at 144; rather, all of § 30-3-5(C)'s proscriptions require violent force.

First, aggravated battery that either "inflict[s] great bodily harm" or risks such harm or death necessarily contains, as an element, the actual or threatened use of physical force. New Mexico law defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." N.M. Stat. Ann. § 30-1-12(A). If anything, this definition necessarily implies a much higher quantum of physical force than the minimum force that § 4B1.1 requires. Compare N.M. Stat. Ann. § 30-1-12(A), with United States v. Harris, 844 F.3d at 1266 (stating that "physical force" under § 4B1.1 must be "capable of causing physical pain

or injury to another person"). "[S]erious disfigurement," for example, results from far more severe violence than does mere "physical pain" under § 4B1.1. As the Tenth Circuit has noted in a similar context, "if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.'" United States v. Treto-Martinez, 421 F.3d 1156, 1159 (10th Cir. 2005)(interpreting U.S.S.G. § 2L1.2's elements clause).

Second, the unlawful touching or application of force "with a deadly weapon" includes as an element the actual or threatened use of physical force. In United States v. Treto-Martinez, the Tenth Circuit considered whether Kansas aggravated battery with a deadly weapon is a "crime of violence" under U.S.S.G. § 2L1.2's elements clause. 421 F.3d at 1159-60. Kansas' aggravated-battery statute proscribes, in relevant part, intentional physical contact with a deadly weapon in "a rude, insulting or angry manner . . . ." Kan. Stat. Ann. § 21-5413 (b)(1)(C).[12] The Tenth Circuit held -- in broad terms -- that "physical force is involved when a person intentionally causes physical contact with another person with a deadly weapon," because such contact "uses physical force by means of an instrument calculated or likely to produce bodily injury . . . ." United States v. Treto-Martinez, 421 F.3d at 1159. The Tenth Circuit also held that intentional physical contact "with a deadly weapon in 'a rude, insulting or angry manner,' has at the very least the 'threatened use of physical force,'" because such contact "could always lead to more substantial and violent contact, and thus it would always include as an element the 'threatened use of physical force.'" United States v. Treto-Martinez, 421 F.3d at 1160. In short, the Tenth Circuit concluded that Kansas aggravated battery with a deadly weapon

---

[12]The Tenth Circuit in United States v. Treto-Martinez analyzed an earlier version of Kansas' aggravated-battery statute, codified at Kan. Stat. Ann. § 21-3414(a). The updated statute, codified at Kan. Stat. Ann. § 21-5413 (b), contains the same relevant language as the earlier version, and, thus, the Court will cite to the updated statute in its analysis.

categorically is a crime of violence under § 2L1.2, because "[p]hysical contact with a deadly weapon . . . will <u>always</u> constitute either actual or threatened use of physical force." <u>United States v. Treto-Martinez</u>, 421 F.3d at 1159 (emphasis added).

The Tenth Circuit's analysis in <u>United States v. Treto-Martinez</u> counsels the same conclusion in this case. New Mexico's aggravated-battery law, like Kansas' statute, proscribes mere physical contact with a deadly weapon. <u>Compare</u> N.M. Stat. Ann. § 30-3-5 ("Aggravated battery consists of the unlawful touching . . . with a deadly weapon . . . ."), <u>with</u> Kan. Stat. Ann. § 21-5413 (b)(1)(C) ("Aggravated battery is . . . knowingly causing physical contact . . . with a deadly weapon . . . ."). As the Tenth Circuit concluded in <u>United States v. Treto-Martinez</u>, such physical contact "has at the very least the 'threatened use of physical force,'" because it "could always lead to more substantial and violent contact, and thus it would always include as an element the 'threatened use of physical force.'" 421 F.3d at 1160. If anything, this reasoning applies with even greater force here, because, unlike in Kansas, New Mexico's aggravated-battery law requires that the defendant unlawfully touch another person "with intent to injure that person or another." N.M. Stat. Ann. § 30-3-5(A). Thus, under New Mexico law, aggravated battery with a deadly weapon does not simply <u>risk</u> "lead[ing] to more substantial and violent contact," <u>United States v. Treto-Martinez</u>, 421 F.3d at 1160; rather, the defendant must <u>intend</u> such contact.

Folse notes -- correctly -- that "there is no controlling [Tenth Circuit] law" regarding whether aggravated battery with a deadly weapon in New Mexico categorically is a crime of violence under § 4B1.2. Objections at 4. Tenth Circuit decisions concerning New Mexico aggravated assault with a deadly weapon, however, are persuasive in this context. In <u>United States v. Maldonado-Palma</u>, for example, the Tenth Circuit concluded that, under New Mexico law, aggravated assault with a deadly weapon requires that the defendant actually use such a weapon, <u>i.e.</u>, that "merely possessing a deadly

weapon" is insufficient. 839 F.3d at 1250 (footnote omitted). The Tenth Circuit, accordingly, held that New Mexico aggravated assault with a deadly weapon categorically is a crime of violence under § 2L1.2, because employing a deadly weapon "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'" United States v. Maldonado-Palma, 839 F.3d at 1250 (quoting Johnson I, 559 U.S. at 140). The same logic applies to aggravated battery with a deadly weapon, which, in New Mexico, requires proof of a deadly weapon's use in the offense and not its mere possession. See N.M. Stat. Ann. § 30-3-5 ("Aggravated battery consists of the unlawful touching . . . with a deadly weapon . . . ."); NMRA, Crim. UJI 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the defendant "touched or applied force to" the victim with a deadly weapon, and that the defendant "used" a deadly weapon). Indeed, this logic is especially persuasive here, because, unlike an attempted-battery assault, Folse's conviction involves a completed battery.

Folse objects that United States v. Maldonado-Palma and other aggravated-assault cases are inapposite, because, he asserts, aggravated battery with a deadly weapon "does not require 'use' of a deadly weapon,'" but rather that the defendant "touch[] a person 'with' a firearm or deadly weapon." Objections at 12 (citing NMRA, Crim. UJI 14-322). In support of this argument, Folse adverts to New Mexico's uniform jury instruction for aggravated battery with a deadly weapon, which directs the jury to decide, in relevant part, whether:

> 1. The defendant touched or applied force to _____ (*name of victim*) by _____ with a [_____] [deadly weapon. The defendant used a _____ (*name of instrument or object*). A _____ (*name of instrument or object*) is a deadly weapon only if you find that a _____ (*name of object*), when used as a weapon, could cause death or great bodily harm] . . . .

NMRA, Crim. UJI 14-322 (bracketed material and emphases in original)(footnotes omitted). The instruction's use notes specify that, if the subject weapon is listed in N.M. Stat. Ann. § 30-1-12(B),

the weapon's name should be inserted into the first pair of brackets. See NMRA, Crim. UJI 14-322 cmt. n.3. Section 30-1-12(B), in turn, designates as "deadly weapons" items such as "any firearm" and various knives. The use notes state that if, however, § 30-1-12(B) does not list the subject weapon, the jury should receive the "alternative" instruction that the second pair of brackets delineates. NMRA, Crim. UJI 14-322 cmt. n.5. Thus, if the defendant is charged, for example, with aggravated battery with a firearm, the jury must decide whether the defendant "touched or applied force to [the victim] . . . with a [firearm]"; alternatively, if § 30-1-12(B) does not list the subject weapon, the jury must decide whether the defendant "used" the weapon. NMRA, Crim. UJI 14-322. Folse, therefore, is technically correct that aggravated battery with a firearm does not require a jury instruction on the defendant's "use" of the firearm.

This conclusion, however, is immaterial, because, in this context, touching or applying force to someone "with" a firearm is the same as "using" a firearm. As the Supreme Court recently noted in Voisine v. United States, 136 S. Ct. 2272 (2016), "[d]ictionaries consistently define the noun 'use' to mean the 'act of employing' something." 136 S. Ct. at 2278 (citing Webster's New International Dictionary 2806 (2d ed. 1954); Random House Dictionary of the English Language 2097 (2d ed. 1987); Black's Law Dictionary 1541 (6th ed. 1990)). The Tenth Circuit, relying on this interpretation, has construed "use" in New Mexico's uniform jury instruction on aggravated assault with a deadly weapon as requiring that the defendant "employ the deadly weapon in committing the assault" and not "merely possess[] a deadly weapon." United States v. Maldonado-Palma, 839 F.3d at 1250. Similarly, the only way to touch or apply force "with" a deadly weapon, as the aggravated-battery instruction requires, NMRA, Crim. UJI 14-322, is to employ a deadly weapon in committing the battery. Folse, however, contends -- without analysis -- that "'with' . . . [is] '[a] word denoting a relation of proximity, contiguity, or association.'" Objections at 12 (citing Black's Law Dictionary

(6th ed. 1990)).  While this definition is accurate, it is meaningless in a vacuum, because it begs the question <u>what</u> is related and <u>how</u>.  Here, the prepositional phrase "with a [deadly weapon]" modifies the verbs "touched" and "applied," with the preposition denoting a causal relationship between the deadly weapon on the one hand and the physical contact on the other.  Folse's apparent suggestion that the term "with" denotes a deadly weapon's mere proximity to, rather than its use in, a battery, contravenes this plain reading.

Folse, in a further attempt to distinguish aggravated-assault cases, contends that those cases "focus on the 'threat' of physical force in determining that the statutes at issue necessitated '*violent force . . . .*'"  Objections at 8 (emphasis in original).  The focus on threats of force, however, is not a distinguishing factor, because any offense may qualify as a crime of violence under § 4B1.2 if it "has as an element the . . . threatened use of physical force . . . ."  U.S.S.G. § 4B1.2(a)(1).  Nevertheless, Folse avers that, because "it is possible to commit battery without threatening a person," <u>i.e.</u>, without "'causing the person to believe the person is about to be battered,'" the aggravated-assault cases' "logic . . . does not translate to New Mexico aggravated battery with a deadly weapon."  Objections at 10 (quoting <u>State v. Branch</u>, 2016-NMCA-071, ¶ 27, 387 P.3d at 258).  This analysis is unavailing for two primary reasons.

First, the Tenth Circuit's threat analysis in its aggravated-assault cases is not limited to overt threats of violence that the victims subjectively apprehend.  In <u>United States v. Ramon Silva</u>, for example, the Tenth Circuit held that aggravated assault with a deadly weapon carries two threats of violence: (i) "[t]he conduct 'could always lead to . . . substantial and violent contact,'" 608 F.3d at 672 (quoting <u>United States v. Treto-Martinez</u>, 421 F.3d at 1160); and (ii) "the conduct 'could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future,'" <u>United States v. Ramon Silva</u>, 608 F.3d at 672 (quoting <u>United States v. Dominguez</u>, 479 F.3d 345,

349 (5th Cir. 2007)). Thus, the Tenth Circuit found threats in (i) the conduct's inherent propensity to lead to violence; and (ii) the victim's subjective apprehension of additional violence. See United States v. Ramon Silva, 608 F.3d at 672. Here, although Folse may be correct that aggravated battery does not necessarily have as an element the subjective-apprehension threat, because it is possible to commit a battery without the victim apprehending any violence, see Objections at 10, it does not follow that aggravated-assault cases are inapposite. To the contrary, those cases have persuasive force, because they hold that the use of a deadly weapon in the commission of an aggravated assault inherently risks leading to physical violence. See United States v. Maldonado-Palma, 839 F.3d at 1250 ("Employing a weapon that is capable of producing death or great bodily harm or inflicting dangerous wounds in an assault necessarily threatens the use of physical force[.]"); States v. Ramon Silva, 608 F.3d at 672 ("Purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of 'force capable of causing physical pain or injury . . . .'")(citation omitted).

Second, Folse's attempt at distinguishing aggravated-assault cases is belied by those cases' reliance on aggravated-battery jurisprudence as persuasive authority. In United States v. Ramon Silva, for example, the Tenth Circuit cited United States v. Treto-Martinez -- in which it concluded that Kansas' aggravated-battery-with-a-deadly-weapon offense qualifies as a "crime of violence" -- for the proposition that employing a deadly weapon in the commission of an assault inherently risks leading to more "'substantial and violent contact . . . .'" United States v. Ramon Silva, 608 F.3d at 672 (quoting United States v. Treto-Martinez, 421 F.3d at 1160). In addition, the Tenth Circuit cited United States v. Dominguez -- a Fifth Circuit aggravated-battery-with-a-deadly-weapon case which followed United States v. Treto-Martinez -- for the idea that using a deadly weapon in an assault could "'put the victim on notice of the possibility that the weapon will be used more harshly in the

future[.]'" United States v. Ramon Silva, 608 F.3d at 672 (quoting United States v. Dominguez, 479

F.3d at 349).  Though the Tenth Circuit "recognize[d] that *Treto-Martinez* and *Dominguez* analyzed

aggravated battery statutes that criminalized intentional physical contact with a deadly weapon," it

nevertheless "consider[ed] these decisions persuasive," because they turn on threats of violence that

stem from the use of a deadly weapon in the offense.  United States v. Ramon Silva, 608 F.3d at 672.

The same logic counsels the Court's reliance on aggravated-assault jurisprudence.

Folse's final argument is that aggravated battery with a deadly weapon is not a "crime of

violence," because the offense does not necessarily entail "death or bodily harm."  Objections at 5-6.

Folse explains his argument as follows: under N.M. Stat. Ann. § 30-3-5(C), aggravated battery with

a deadly weapon "is a distinct crime from" aggravated battery with great bodily harm, meaning that,

by implication, it does not have as an element the threat of "death or great bodily harm."  Objections

at 7.  Nor, according to Folse, does the use of a firearm inherently risk "death or great bodily harm."

Objections at 7.  Folse observes that a "deadly weapon" is defined as "'any firearm, whether loaded

or unloaded; or any weapon which is capable of producing death or great bodily harm . . . .'"

Objections at 5 (emphases omitted)(quoting  N.M. Stat. Ann. § 30-1-12(B)).  Folse interprets the

semicolon separating "any firearm" from other weapons "capable of producing death or great bodily

harm" as signifying that "firearms . . . are not defined by Section 30-1-12(B) as *per se* 'capable of

producing death or great bodily harm.'"  Objections at 6.  Thus, Folse posits, neither the statutory

offense nor the definition of "deadly weapon" requires the use, or threatened use, of violent physical

force.  Objections at 6.

This line of analysis misapprehends the quantum of physical force necessary to satisfy

§ 4B1.2's elements clause.  Force capable of producing "death or great bodily harm," Objections at

5-6, is not the standard; rather, "physical force" under § 4B1.2 means "violent force, or force capable

of causing physical pain or injury to another person." United States v. Harris, 844 F.3d at 1266.  An aggravated battery with a deadly weapon that satisfies § 4B1.2's "physical force" standard may fall short of inflicting "death or great bodily harm"; all it requires is "violent force, or force capable of causing physical pain or injury to another person." United States v. Harris, 844 F.3d at 1266.   The "physical force" standard is met when analyzing the elements that Folse concedes applies to his conviction: "(1) the unlawful touching or application of force to the person of another; (2) with intent to injure a person; (3) with a firearm (whether loaded or unloaded)." Objections at 7.  See N.M. Stat. Ann. § 30-3-5(C).  The unlawful touching or application of force with a firearm -- whether loaded or unloaded -- is "violent force, or force capable of causing physical pain or injury to another person." See United States v. Treto-Martinez, 421 F.3d at 1159 ("Physical contact with a deadly weapon . . . will always constitute either actual or threatened use of physical force.").

Further, the term, "deadly weapon," itself suggests that a deadly weapon's use entails "death or great bodily harm." See Black's Law Dictionary, 1731 (9th Ed. 2009)(Defining a deadly weapon as: "[a]ny firearm or other device . . . from the manner in which it is used or is intended to be used, is calculated or likely to produce death.").  In listing weapons that are capable of "producing death or great bodily harm," the New Mexico Legislature has also indicated that firearms would be weapons that necessarily entail "death or great bodily harm," because a firearm (whether loaded or unloaded) is as deadly, if not more deadly, as any of the items listed: "daggers, brass knuckles, switchblade knives . . . swordcanes, any kind of sharp pointed canes, also slingshots, slung shots, [and] bludgeons." N.M. Stat. Ann. § 30-1-12(B).  Given this context and the foregoing analysis, the Court concludes that Folse's prior aggravated battery with a deadly weapon conviction is a "crime of violence" under U.S.S.G. § 4B1.2(a).

## C. FOLSE'S PRIOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE CONVICTION IS A "CONTROLLED SUBSTANCE OFFENSE" UNDER U.S.S.G. § 4B1.2(b).

Folse contends that, for policy reasons, the Court should conclude that Folse's possession of marijuana with intent to distribute conviction is not a "controlled substance offense" under U.S.S.G. § 4B1.2(b). Objections at 13. Folse concedes that "technically this offense of conviction meets the definition of 'controlled substance offense." Objections at 14. Folse, nevertheless, argues that the Court should disregard this controlling definition, because; (i) his conviction is the "lowest degree of felony" in New Mexico and is treated the same as simple marijuana possession; (ii) marijuana is now recreationally legal in nine states and the District of Columbia; (iii) medical marijuana is now legal in New Mexico; and (iv) Folse suffers from a medical condition that would qualify him for lawful medical marijuana use. See Objections at 14-15.

Under U.S.S.G. § 4B1.2(b), a "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance (or a counterfeit substance) with intent to . . . distribute." U.S.S.G. § 4B1.2(b). Folse pled guilty to possession of marijuana with intent to distribute. See Objections at 13; N.M. Stat. Ann. § 30-31-22(A)(1). For a first offense under N.M. Stat. Ann. § 30-31-22(A)(1), Folse was subject to 18 months imprisonment. See N.M. Stat. Ann. § 30-31-22(A)(1); N.M. Stat. Ann. § 31-18-15(A)(13); Objections at 13-14. Marijuana is classified as a "controlled substance." U.S.C. §§ 802(6), 812(c)(10). Folse's conviction, thus, falls under the ambit of a "controlled substance offense." U.S.S.G. § 4B1.2(b).

The Court declines to ignore the Sentencing Guideline's clear command. Although state marijuana laws have undergone a sea change in the past twenty years, see Melanie Reed, The Quagmire that Nobody in the Federal Government Wants to Talk About: Marijuana, 44 N.M. L.

Rev. 169, 171-72 (2014)(Describing state marijuana laws that have changed in the past twenty years), federal law, including the Sentencing guidelines, remains unchanged. Folse argues that the Court's prior opinions in United States v. Rodriguez, 147 F. Supp. 3d 1278, 1281 (D.N.M. 2015)(Browning, J.), and United States v. Burciaga-Duarte, No. 14-0592, 2015 U.S. Dist. LEXIS 80950, at *1 (D.N.M. June 9, 2015)(Browning, J.), demonstrate that marijuana convictions should be treated differently than narcotic drug convictions, because marijuana offenders do not show the same "danger to the community." Objections at 15 (citing United States v. Rodriguez, 147 F. Supp. 3d at 1281). Those cases diverge from the present case, because neither implicated U.S.S.G. § 4B1.2(b)'s clear definition of "controlled substance offense." United States v. Rodriguez, 147 F. Supp. 3d at 1290; United States v. Burciaga-Duarte, No. 14-0592, U.S. Dist. LEXIS 80950, at *16, *24-*35. Although United States v. Rodriguez involved a defendant's possession of marijuana with intent to distribute, that opinion involved a detention hearing and not a sentencing. See United States v. Rodriguez, 147 F. Supp. 3d, at 1281. The Court's main focus there was to determine whether that defendant was a flight risk or a danger to the community in the pretrial detention context. See 147 F. Supp. 3d, at 1281. The Court noted that, with certain crimes, a presumption arises that the defendant is a flight risk and a danger to the community -- including possession of marijuana with intent to distribute. See 147 F. Supp. 3d at 1290. The Court also noted, however, that the United States inconsistently enforces the federal marijuana laws. See 147 F. Supp. 3d at 1288 ("While three people were convicted in the District of Colorado of such [marijuana] offenses in 2014, 352 individuals were convicted in the District of New Mexico for those crimes."). Based on several factors, including the "pure marijuana" nature of the crime and Rodriguez' significant community ties, the Court concluded that Rodriguez was not a danger to the community, but that he presented a flight risk -- the Court, however, determined it could mitigate that risk. See 147 F. Supp. 3d at 1295-

98. In coming to that conclusion, the Court considered the Sentencing Guidelines, specifically 18 U.S.C. § 3553(a)'s factors, and it determined that "[t]he Executive Branch's decision to not enforce federal marijuana laws in certain states affects a number of factors set forth in § 3553(a)." 147 F. Supp. 3d at 1292. Among other things, the Executive Branch's policy "puts downward pressure on the Court with regard to each of these factors in pure marijuana cases," and the Court "cannot soundly conclude that imposing a Guidelines sentence on a poor Hispanic individual caught distributing marijuana in New Mexico is 'just punishment' when wealthier Caucasians in states like Colorado and Washington receive no punishment whatsoever for the same offense." 147 F. Supp. 3d at 1292. In United States v. Burciaga-Duarte, the Court concluded, for similar reasons, that it would sentence a defendant in the guideline's lower range in a marijuana-only offense, because of the Executive Branch's selective enforcement of marijuana laws. See, No. 14-0592, U.S. Dist. Lexis 80950, at *24-*35.

The Court does not run afoul of its earlier decisions, because the issue before the Court now diverges from the issues in United States v. Burciaga-Duarte, U.S. Dist. Lexis 80950, at *24, and United States v. Rodriguez, 147 F. Supp. 3d at 1292. Neither decision grappled with U.S.S.G. § 4B1.2(b). In sentencing a defendant or determining his flight risk, the Court has a degree of discretion, but in calculating the guideline range, the Court does not. See United States v. Sim, 556 F. App'x 726, 730 (10th Cir. Feb. 28 2014)(unpublished)("[The district court] was correct insofar as it said that § 4A1.2(e) permits no discretion in *calculating* a Guidelines sentence.")(emphasis in original); United States v. Keiffer, 681 F.3d 1143, 1165 (10 Cir. 2012). Although 18 U.S.C. § 3553(a)'s factors may ultimately bear on the Defendant's overall sentence, that question is not the one before the Court today. The Court, accordingly, concludes that Folse's prior possession of marijuana with intent to distribute conviction was a controlled substance offense.

In sum, the Court has signaled that it is not likely to detain, pre-trial, a United States citizen who is charged only with a marijuana-only drug crime. If the Department of Justice is not going to go after wealthy Anglo-owned marijuana establishments in Colorado and other states, the Court is not likely to defer to the United States' requests in New Mexico that it should detain Hispanic defendants charged only with marijuana-only drug crimes. Similarly, if a defendants' criminal background includes marijuana-only possession, or marijuana-only drug convictions or arrests, the Court is not likely to give them much, if any, weight, in deciding whether to detain that defendant before trial. Similarly, at the sentencing of a marijuana-only crime, the Court is likely to vary downward as much as possible. Those are areas in which the Court has some discretion. In calculating the correct guideline range -- as opposed to deciding what to do with the guideline range -- the Court has to calculate the guideline range correctly. Folse's policy, <u>Kimbrough v. United States</u>, and § 3553(a) factors are not appropriately considered here, but are appropriate later at the sentencing phase when departures, variances, and § 3553 factors are typically argued and considered.

## II.    FOLSE'S LETTER TO "CREEPER" OBSTRUCTS OR IMPEDES THE ADMINISTRATION OF JUSTICE UNDER U.S.S.G. § 3C1.1.

Under U.S.S.G. § 3C1.1, a defendant's offense level must be enhanced by 2 levels if:

> (1)    the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and
>
> (2)    the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. The Guidelines' commentary gives the following relevant examples of obstruction of justice:

> . . . .

       (A)       threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so.

       . . . .

       (K)       threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.

U.S.S.G. § 3C1.1 Commentary 4(A), (K). See United States v. Fleming, 667 F.3d 1098, 1109 (10th Cir. 2011)("Section 3C1.1 expressly applies to attempts by defendants to directly or *indirectly* threaten, intimidate, or influence a potential witness.")(emphasis in original). The enhancement applies even for attempted obstruction of justice if the United States demonstrates that the defendant intended to obstruct justice and that the defendant committed an act that constitutes a substantial step toward the obstruction of justice. See United States v. Fleming, 667 F.3d 1098, 1107 (10th Cir. 2011). In Folse's letter to Creeper, Folse writes:

> I will be released on all charges if some Fool name [sic] [Estrada] does not show up to testify against me[.] . . . [P]lease rap to him for me, tell him to go M.I.A. "Chill out for a while"[;] I get set free n[e]xt week or get life in prison based on [Estrada's] testimony.

Sentencing Memorandum at 1, filed April 15, 2016 (Doc. 159-11)("Creeper Letter"). Folse argues that this language does not "threaten, intimidate or unlawfully influence the witness [Estrada], nor does he enlist 'Creeper' to do so. . . . At most, this language can be interpreted as asking an intermediary to suggest to a witness that the witness not appear in court." Objections at 22. Folse also reasons that this writing could be "motivated by a number of things," including a concern for the testimony's truthfulness, and, thus, the writing would not trigger the enhancement. Objections at 22.

The Court disagrees with Folse's arguments. The Tenth Circuit's conclusion in United States v. Fleming, 667 F.3d at 1110-11, demonstrates why Folse's arguments are misplaced. In United States v. Fleming, the defendant, after learning that a woman named Ms. Scott had been subpoenaed

to testify against him, instructed a woman named Michelle: "[*T*]*ell her not to be talking to anybody about this shit*. . . . I'm afraid they might use her, try to use her against me, or threaten her with a, putting a case on her, to testify against me, cause these are some dirty people man." United States v. Fleming, 667 F.3d at 1110 (emphasis in original). Noting that, under U.S.S.G. § 3C1.1, a defendant's offense level can be enhanced 2 levels for attempted obstruction of justice if the Defendant commits an act that is a substantial step toward obstruction of justice, the Tenth Circuit concluded that the defendant's request that Michelle tell Ms. Scott "'not to be talking to anybody about this shit' was an attempt to threaten or influence Ms. Scott and satisfied the substantial step requirement." 667 F.3d at 1111. Given the entirety of the letter, Folse's request to Creeper that he tell Estrada. to "go M.I.A. 'Chill out for a while'" conveys the same message that the defendant's message communicated in United States v. Flemming. Creeper Letter at 1. See 667 F.3d at 1111. Folse's letter, accordingly, amounts to at least an attempt to threaten or influence Estrada.

Folse, nevertheless, argues that the obstruction of justice enhancement is applicable only in cases of "extreme conduct." Objections at 20. For this expansive proposition, Folse cites the Court's conclusions in three cases. First, he cites the Court's determination in United States v. Yeselew that the obstruction of justice enhancement applied where the defendant "beat the only witness . . . threatened to kill [the witness] . . . and tried to transfer blame for the murder to the witness." United States v. Yeselew, 2010 WL 3834418, at *11 (D.N.M. Aug. 5, 2010)(Browning, J.). See Objections at 20-21. Second he cites the Court's conclusion in United States v. Roybal that the enhancement applied, because the defendant "tracked down one of the government's confidential sources," told the source that the defendant was "watching the source's house, knew when their kids came home," and he would "make [his] family pay." United States v. Roybal, 188 F. Supp. 1163, 1212-13 (D.N.M. 2016)(Browning, J.). See Objections at 20-21. Folse

contrasts those cases with United States v. Tilga, where the Court concluded that U.S.S.G. § 3C1.1 did not apply. See United States v. Tilga, 824 F. Supp. 2d 1295, 1338 (D.N.M. 2011)(Browning, J.). In that case, the defendant told a witness that, if anyone asked about where he had obtained his property, to lie about it. See United States v. Tilga, 824 F. Supp. at 1337. Subsequently, the IRS began an investigation into the defendant's property, and the defendant told the witness "he was going to pay." Objections at 22. United States v. Tilga, 824 F. Supp. at 1337. The United States, however, conceded that the "[witness] was going to pay" statement was an "unpremeditated emotional response" that lacked the intent required for obstruction of justice and the Court agreed. United States v. Tilga, 824 F. Supp. at 1338.

The conduct in United States v. Yeselew and United States v. Roybal assuredly amounts to obstruction under U.S.S.G. § 3C1.1, but Tenth Circuit precedent indicates that far less extreme conduct can be sufficient to meet U.S.S.G. § 3C1.1's standard. See United States v. Fleming, 667 F.3d at 1111. Folse's "extreme conduct" argument is, accordingly, misplaced. Folse's circumstances also sufficiently diverge from the unpremeditated emotional response in United States v. Tilga, to make the Court's ruling that the defendant there lacked the requisite intent inapposite. Here, in contrast, Folse wrote out his threat, indicating a much higher level of premeditation. Further, in United States v. Tilga, the threatened witness's personal knowledge of wrongdoing was so slight that it was "unlikely that the false statements . . . would reasonably interfere with the investigation or thwart prosecution." 824 F. Supp. 2d at 1338. In contrast, here, Folse wanted Estrada. to be "M.I.A." at trial, because Folse believed that Estrada's testimony would be dispositive. Creeper Letter at 1. Folse's belief that Estrada was an essential witness further demonstrates that Folse designed his writing with the intent to obstruct justice. Given the letter's context and its contents, the Court concludes that a 2-level enhancement will apply.

## III. FOLSE'S FLIGHT FROM LAW ENFORCEMENT CREATED A SUBSTANTIAL RISK OF DEATH OR SERIOUS INJURY UNDER U.S.S.G. § 3C1.2.

Folse's driving and corresponding conduct while fleeing law enforcement in both the silver Saturn and Kia Sorrento created a substantial risk of death or serious injury. Under U.S.S.G. § 3C1.2, if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," the Court must enhance the Defendant's offense level by 2. U.S.S.G. § 3C1.2. "Reckless" is defined as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." United States v. Porter, 643 F. App'x 758, 759 (10th Cir. March 29, 2016)(unpublished). The standard of care under the guidelines "is that of the reasonable person, not the reasonable fleeing criminal suspect." United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997).

Folse's actions while driving both cars were reckless and put others at substantial risk. First, Folse drove a vehicle -- the silver Saturn -- that had a standard transmission, but told the passengers "he didn't know how to drive a standard." Transcript of Trial Proceedings at 241:14-15 ("Trial Tr."). In the Saturn, Folse drove over the speed limit, ran a stop sign and a red light, veered into oncoming traffic, and threw a gun out the window. See Trial Tr. at 242:17-18; id. at 242:23-24; id. at 243:7-9; id. at 243:15-16; id. at 243:21-25; id. at 345:19-20. He eventually lost control of the Saturn and rolled it. See Trial Tr. at 245:22-246:3. Folse then took off running and stole a Kia Sorrento. See Trial Tr. 246:20; id. at 353:20. The police pursued. See Trial Tr. at 350:1-2. In the Kia, he wove in and out of other cars, "going across three lanes at a time," during lunch hour traffic, and may have reached sixty miles per hour in a forty mile per hour zone. Trial Tr. at 440:5-8; id. at 440:12-14; id. at 441:10-23. These actions grossly deviated from the standard of care. Folse put

other drivers and pedestrians at substantial risk when he threw the gun out the window -- because of the possibility of accidental discharge -- and he put his passengers, other drivers, and pedestrians at substantial risk of injury when he wove in and out of traffic at high speed, and blew threw a stop sign and a red light.  See United States v. Porter, 643 F. App'x at 759 (Concluding that a U.S.S.G. § 3C1.2 enhancement applied to a defendant who, among other things, led police officers on a short car pursuit, "commit[ed] several traffic violations . . . ultimately crash[ed] into a residential garage" and "dropped a pistol on the ground" as the police pursued); United States v. Chandler, 12 F.3d 1427, 1433-34 (7th Cir. 1994)(Ruling that a reckless endangerment enhancement applied where police chased a defendant at dusk through residential neighborhoods at speeds between thirty-five and fifty miles per hours, because of possible injury to residents).

Folse contends that the enhancement should not apply, because he did not "aim[] either of the vehicles at anyone, or even came close to colliding with anyone." Objections at 19.  Those facts are immaterial, because intent to harm or completed harm are not required under the guidelines.  See U.S.S.G. § 3C1.2.  Rather, U.S.S.G. § 3C1.2 requires only a substantial risk of serious bodily injury or death and awareness of that substantial risk.  See U.S.S.G. § 3C1.2; United States v. Porter, 643 F. App'x at 759.  The Court concludes that the required substantial risk existed here, and Folse was aware of that risk.  It will, accordingly, apply a 2-level enhancement.

**IT IS ORDERED** that Defendant Kevin Folse's Formal Objections to Presentence Report, filed May 15, 2017 (Doc. 223), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
  United States Attorney
William J. Pflugrath
Samuel A. Hurtado
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

Gregory M. Acton
Law Office of Gregory M. Acton
Albuquerque, New Mexico

Mary V. Carmack-Altwies
Mary V. Carmack Law P.C.
Albuquerque, New Mexico

Sara Nathanson Sanchez
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes
Albuquerque, New Mexico

      *Attorneys for the Defendant*