## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                                                                        No. CR 15-2485 JB

KEVIN FOLSE

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's Motion for Permission to Wear Civilian Clothing and Be Unshackled at Sentencing, filed March 13, 2018 (Doc. 256)("Motion"). The Court held a hearing on March 19, 2018. The primary issues are: (i) whether the Court should allow Defendant Kevin Folse to wear civilian clothing during his sentencing hearing; and (ii) whether the Court should permit Folse to be unshackled during his allocution. The Court grants the Motion in part and denies the Motion in part. The Court will permit Folse to wear civilian clothing at the sentencing hearing and will ask the United States of America's Marshals Service ("U.S. Marshals Service") to uncuff one of Folse's hands during his allocution.

## **FACTUAL BACKGROUND**

The Court recited this case's facts and early procedural history in its Memorandum Opinion and Order at 2-7, 301 F. Supp. 3d 1037, 1041-46, filed October 5, 2017 (Doc. 247)("MOO"). The Court incorporates that recitation here. The Court includes the footnotes from the MOO.

> The Court takes its factual account from the Presentence Investigation Report, filed May 10, 2017 (Doc. 220)("PSR"). . . .
>
> Between June 30 and July 2, 2015, [Albuquerque Police Department ("APD")] detectives searched for Folse, a.k.a. "Criminal," who was fleeing from

law enforcement and had "committed various violent crimes" during flight. PSR ¶ 5, at 4. On July 2, 2015, APD officers stopped a stolen black Cadillac . . . . PSR ¶ 6, at 4. Although the officers determined that Folse was not the driver, the driver stated that he had just purchased the vehicle from Folse and that Folse was located at 1825 Pitt Street NE in Albuquerque, New Mexico. See PSR ¶ 6, at 4. APD dispatched officers to the residence, . . . . See PSR ¶ 7, at 4. The officers failed, however, to positively identify the man. See PSR ¶ 7, at 4. An APD detective then proceeded to the back of the residence and observed an individual -- later identified as Valente Estrada -- looking out the back window. See PSR ¶ 7, at 4. Estrada said the front door was "barricaded" and that he was alone in the residence. PSR ¶ 8, at 5.

Shortly thereafter, the man first observed at the front door -- later identified as Folse -- "had [Estrada] join four other individuals in the bedroom with Angela Murray," Folse's girlfriend,[1] where Folse "proceeded to take all of their cellular telephones and remove[] their batteries . . . ." PSR ¶ 8, at 5. Estrada "observed that Folse had both a knife and a handgun in his possession." PSR ¶ 8, at 5. To help "ease the tension," Estrada offered Folse and the others marijuana and methamphetamine. PSR ¶ 9, at 5. After consuming the methamphetamine, Folse threatened to stab one of the individuals and to hold "everyone in the room at gunpoint for seven hours."[2] PSR ¶ 9, at 5. Tensions were high, because Murray had challenged Folse to prove that he had not "been with any of the women in the house[.]" PSR ¶ 10, at 5. In response to this challenge, Folse "pulled out his gun and started pistol-whipping one of the females in the home." PSR ¶ 10, at 5.

Folse eventually decided to leave the residence, but, before leaving, Folse ordered Estrada to hand over the keys to his 2002 silver Saturn passenger vehicle. See PSR ¶ 11, at 5. Estrada complied with Folse's order, fearing that he "had no choice . . . based on the continuous threats and acts of violence against him." PSR ¶ 11, at 5. Folse and Murray then exited the house, and ordered Estrada and one of Murray's female friends into the Saturn. See PSR ¶ 11, at 5. Estrada and the friend "did not feel they had a choice but to go with Folse . . . ." PSR ¶ 11, at 5.

---

[1]Murray was initially a co-Defendant in this matter. See Superseding Indictment ¶ 2, at 2, filed September 10, 2015 (Doc. 31)("Superseding Indictment"). The Court severed the two matters on September 29, 2015. See Order Granting Defendant Kevin Folse's Motion to Sever Defendants, filed September 29, 2015 (Doc. 72).

[2]The PSR acknowledges that "[t]estimony at trial did not explain what happened inside the residence at Pitt prior to [Estrada] coming home[,] or why Folse was holding three persons at gunpoint inside the home." PSR ¶ 9, at 6.

APD received information that Folse had departed the house in a silver Saturn. See PSR ¶ 12, at 5. Officers soon caught up to the Saturn and attempted to conduct a traffic stop . . . . See PSR ¶ 12, at 5. . . . [T]he vehicle . . . "crashed violently, rolling the car onto its roof." PSR ¶ 13, at 6. As APD arrived on the scene, "the vehicle was still spinning and four individuals emerged from the broken windows." PSR ¶ 13, at 6.

Folse and Murray fled on foot. See PSR ¶ 13, at 6. As they entered a residential street, they came upon a 2008 Kia Sorrento sitting in a driveway with the engine running. See PSR ¶ 14, at 6. Folse opened the driver-side door and told Michael B., a juvenile sitting in the passenger seat, that he had "three seconds to get out." PSR ¶ 14, at 6. Michael B. complied with Folse's order, but as Michael B. was exiting the car, Folse backed the car out of the driveway and clipped Michael B.'s left shoulder with the open car door. See PSR ¶ 14, at 6; id. ¶ 16, at 6. In an interview and later at trial, Michael B. testified that Folse had a firearm; immediately after the incident, however, he told a 911 operator that Folse did not have a firearm. See PSR ¶ 14, at 6; id. ¶ 16, at 6.

APD officers later located the Kia Sorrento and recognized Folse as the driver. See PSR ¶ 15, at 6. When the officers attempted another vehicle stop, Folse again failed to yield. See PSR ¶ 15, at 6. "A vehicle pursuit ensued, but was discontinued due to the reckless driving by Folse." PSR ¶ 15, at 6. Folse eventually abandoned the Kia Sorrento on Interstate 40, hopped the freeway retaining wall, and "ran towards a business complex where he was able to get a ride out of the area." PSR ¶ 15, at 6.

The next day, on July 3, 2015, APD located Folse at a Seven-Eleven store in Albuquerque. See PSR ¶ 17, at 6. When officers attempted to arrest Folse, he fled the scene in a stolen 1999 Ford F-150 truck.[3] See PSR ¶ 17, at 6. A vehicle pursuit again ensued, but "officers disengaged from the chase because Folse was putting the public at risk of being harmed." PSR ¶ 17, at 6. Later that day, Isleta Pueblo Police Department officers observed the Ford F-150 truck parked at the Isleta Casino outside Albuquerque. See PSR ¶ 17, at 6. After reviewing security tapes, officers confirmed that Folse was in the Casino. See PSR ¶ 17, at 6. When Folse exited Isleta Casino, officers arrested him without incident. See PSR ¶ 17, at 6. The keys to the stolen F-150 were in his pocket. See PSR ¶ 17, at 6.

---

[3]The PSR, in its discussion of "Offense Behavior Not Part of Relevant Conduct," states that Folse stole the F-150 on July 1, 2015, while the vehicle's owner was inside a convenience store. PSR ¶ 52, at 10. The owner had left the keys in the ignition and the engine running. See PSR ¶ 52, at 10. The next day, on July 2, 2015, Folse was observed driving the F-150. See PSR ¶ 52, at 10.

In September 2015, Folse wrote a letter to a friend known as "Creeper," asking him "to do what he could in assuring that [Estrada] would not show up to testify." PSR ¶ 18, at 6. "The letter was given to [Estrada] who then gave it to law enforcement." PSR ¶ 18, at 6-7.

MOO at 2-5, 301 F. Supp. 3d at 1043-46.

## PROCEDURAL BACKGROUND

On July 14, 2015, a grand jury indicted Folse for: (i) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I); (ii) carjacking a silver Saturn, in violation of 18 U.S.C. § 2119 (Count II); and (iii) using, carrying, and brandishing a firearm in relation to and in furtherance of a crime of violence, i.e., carjacking the Saturn, in violation of 18 U.S.C. § 924(c) (Count III). See Indictment at 1-2, filed July 14, 2015 (Doc. 10)("Indictment"). On September 9, 2015, a grand jury returned a Superseding Indictment. See Superseding Indictment 1, filed September 10, 2015 (Doc. 31)("Superseding Indictment"). The Superseding Indictment preserves the original Indictment's three counts and adds two new counts. Count IV charges Folse with carjacking a 2008 Kia Sorrento, in violation of 18 U.S.C. § 2119, see Superseding Indictment ¶ 4, at 3, and Count V charges Folse with using, carrying, and brandishing a firearm in relation to and in furtherance of a crime of violence, i.e., carjacking the Kia Sorrento, in violation of 18 U.S.C. § 924(c), see Superseding Indictment ¶ 5, at 3. Plaintiff United States . . . later dismissed Count V, because it obtained evidence that Folse did not use a firearm in the second alleged carjacking. See United States' Unopposed Motion to Dismiss Count Five of the Superseding Indictment ¶¶ 5-9, at 3, filed October 1, 2015 (Doc. 83). On October 8, 2015, following a three-day trial, a jury convicted Folse on all four remaining counts. See Verdict at 1, filed October 8, 2015 (Doc. 105).

MOO at 5-7, 301 F. Supp. 3d at 1041-43. Folse's sentencing hearing is scheduled for March 21, 2018. See Notice, filed March 9, 2018 (Doc. 253).

    **1.    The Motion.**

Folse requests that the Court permit him to wear civilian clothing and to be unshackled "during allocution at his upcoming sentencing hearing." Motion at 1. According to Folse, the Court has broad discretion in controlling the courtroom. See Motion at 1. Folse argues that, pursuant to United States v. Sanchez-Gomez, 859 F.3d 649 (9th Cir. 2017), a defendant has a right

to freedom from restraints and that, under United States v. Sanchez-Gomez, to justify shackling a defendant at a sentencing hearing, the United States must identify a "specific security need" particular to that individual defendant. Motion at 2 (quoting United States v. Sanchez-Gomez, 859 F.3d at 666). Folse summarizes that he has never threatened the Court's security and concludes by asking that the Court grant his requests, "so that he may present himself and allocute to the Court with humanity and dignity." Motion at 2.

### 2. **The Response.**

The United States opposes Folse's Motion. See United States' Response Opposing Defense Motion for Civilian Clothing and Physical Freedom at Sentencing at 1-3, filed March 14, 2018 (Doc. 257)("Response"). The United States argues that granting Folse's requests "would impose a burden on the United States Marshals Service ('USMS') for no benefit in return." Response at 1. Although the United States recognizes the Court's control over the courtroom, the United States disagrees with Folse that it needs to justify restraining Folse at his sentencing hearing. See Response at 1. According to the United States, allowing Folse to wear civilian clothing would slow transporting him to the courtroom, and divert the U.S. Marshals Service's time and energy from other tasks. See Response at 2. Although the United States consents to unshackling one of Folse's hands, the United States adds that completely unshackling Folse would mandate more security in the courtroom. See Response at 2. The United States concludes by noting that Folse seeks only to maintain his "humanity and dignity," but that he has not raised such concerns before his earlier appearances before the Court. Response at 2 (quoting Motion at 2).

### 3. **The Reply.**

Folse replies to the Response. See Reply in Support of Defendant's Motion for Permission to Wear Civilian Clothing and be Unshackled at Sentencing at 1-3, filed March 16, 2018 (Doc. 261)("Reply"). Folse describes sentencing as "a unique proceeding in which the Court must sit in judgment of another human being and determine his fate." Reply at 1. Folse also notes that he seeks to be unshackled only during his allocation. See Reply at 2. According to Folse, the United States identifies no specific security risk that Folse poses. See Reply at 2. Folse further disagrees with the United States that his requests will cause the U.S. Marshals Service more than "a minor inconvenience." Reply at 2. See id. at 2-3.

### 4. **The Hearing.**

At the hearing, Folse noted that he has worked hard on his allocation and approaches the allocation seriously. See Draft Transcript of Hearing at 2:20-3:10 (taken March 19, 2018)(Sanchez)("Tr.").[4] Folse conceded that he does not want to make the Court uncomfortable. See Tr. at 2:14-19 (Sanchez). Folse averred, however, that he has caused no problems in the courtroom even though he has appeared on several occasions. See Tr. at 3:19-4:1 (Sanchez).

The United States reiterated its argument that Folse's request for civilian clothing would burden the U.S. Marshals Service and benefit Folse little. See Tr. at 4:20-5:15 (Mysliwiec). The U.S. Marshals Service expressed no opinion on Folse's clothing but indicated that its policy dictated restraining defendants who were in custody. See Tr. at 6:16-7:4 (Nash).

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Folse responded that he understood the U.S. Marshals Service's concerns, but that he disagreed with the United States' cost-benefit analysis, and he asked the Court to reconsider the shackling. See Tr. at 8:1-12 (Sanchez). The Court indicated that it had read United States v. Sanchez and disagreed with the majority. See Tr. at 8:16 (Court); id. at 8:21-9:1 (Court). The Court noted that the opinion was divided and that no other courts had followed the opinion. See Tr. at 8:22-24 (Court); id. at 9:1-3 (Court). According to the Court, the New Mexico district court judges had discussed United States v. Sanchez' implications among themselves and with the U.S. Marshals Service and had agreed to continue shackling defendants who were in custody and to require no one to make individualized decisions about defendants' safety risks. See Tr. at 8:13-20 (Court). The Court explained that the New Mexico district court judges saw such large numbers of defendants that the individualized decisions envisioned in United States v. Sanchez would considerably burden the U.S. Marshals Service and New Mexico district court judges. See Tr. at 9:5-15 (Court).

The Court assured Folse that his clothing and shackles would not influence the Court's decision, and granted the motion in part and denied the motion in part. See Tr. at 9:16-10:25 (Court). The Court noted that it would follow the court's policy and keep Folse shackled. See Tr. at 11:2-7 (Court). Folse inquired how he would turn pages during the allocation in shackles, and the Court indicated that Folse could have one hand unshackled, because the U.S. Marshals Service frequently allows that practice. See Tr. at 11:9-18 (Court).

**LAW REGARDING THE TRIAL JUDGE'S DISCRETION TO CONDUCT PROCEEDINGS**

A trial judge has near unfettered discretion to orchestrate courtroom proceedings in the way he or she deems fit, so long as it does not offend a defendant's constitutional rights. See, e.g.,

Sheppard v. Maxwell, 384 U.S. 333, 359 (1966)("The carnival atmosphere at trial could easily have been avoided since the courtroom and courthouse premises are subject to the control of the court."). "It is the judge's responsibility to exercise control over the courtroom and take security precautions . . . ." Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985).

> It is a judge's duty to order some type of precaution if he or she believes there might be some sort of trouble. Usually this sort of thing is delegated to the United States Marshal or to court security officers, but the judge remains ultimately responsible, and this responsibility directly concerns his duty to see that cases are decided in a peaceful and dignified atmosphere.

Martinez v. Winner, 771 F.2d at 434.

The Supreme Court of the United States has admonished certain courtroom practices that affected defendant's fair-trial rights. See Holbrook v. Flynn, 475 U.S. 560, 562, 570 (1986)(addressing whether seating "four uniformed state troopers" in the row of spectators' seats immediately behind the defendant at trial denied the defendant his right to a fair trial, and holding that such seating was not so inherently prejudicial it denied the right to a fair trial); Estelle v. Williams, 425 U.S. 501, 502, 512 (1976)(considering "whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws," and holding that "the State cannot, consistently with the Fourteenth Amendment [to the Constitution of the United States], compel an accused to stand trial before a jury while dressed in identifiable prison clothes"). The "Williams-Flynn" standard -- developed from Estelle v. Williams and Holbrook v. Flynn -- thus demands of a trial judge that courtroom proceedings -- that the state sponsors -- do not result in an inherent prejudice to a criminal defendant. Carey v. Musladin, 549 U.S. 70, 76-77 (2006). That standard, then, can be "a guide for trial judges . . . its

general formulation is enough to [further] tell trial judges that it applies to the behavior of courtroom visitors." Carey v. Musladin, 549 U.S. at 82 (Souter, J., concurring in the judgment).

## ANALYSIS

The Court will grant Folse's Motion in part and deny it in part. The Court will permit Folse to wear civilian clothing at his sentencing hearing and to allocute with one hand unshackled. The Court will not, however, allow Folse to remain unshackled throughout the hearing or to have both hands unshackled during his allocution.

Folse requests to wear civilian clothing during his sentencing hearing. See Motion at 1. The Court will grant Folse's request. The U.S. Marshals Service confirmed the Court's doubts that facilitating Folse's change from prison to civilian clothing will burden the U.S. Marshals Service; the U.S. Marshals Service clarified that it did not oppose Folse wearing civilian clothing at the sentencing hearing. See 6:16-19 (Nash). Folse's attire at the sentencing hearing would not influence the Court's decision. Determining the proper sentence will occupy the Court's attention; the Court is not a jury, and no presumption of innocence remains to sully at the sentencing hearing. United States v. Portillo-Quezada, 469 F.3d 1345, 1350 (10th Cir. 2006)("It is well-settled that defendants who are compelled to appear before the jury in handcuffs, shackles or prison attire suffer prejudice which unconstitutionally undermines the presumption of innocence."). The Court, nevertheless, recognizes allocution's place in the Anglo-American common law, Green v. United States, 365 U.S. 301, 304 (1961)("As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." (citing Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B.))), and respects Folse's regard for his

allocution as a serious occasion and desire to act accordingly. As the Court sees little argument against Folse wearing civilian clothing, the Court will permit him to dress in such articles.

Folse also wishes to be unshackled during his allocution. See Motion at 1. The Court will not ask the U.S. Marshals Service to fully unshackle Folse during his allocution, although the Court will request that the U.S. Marshals Service unshackle one of Folse's hands. "[T]he decision to impose appropriate means in restraining, even to the extent of shackling, a defendant lies within the informed discretion of the trial court and will not be disturbed on appeal unless that discretion was clearly abused." United States v. Hack, 782 F.2d 862, 867 (10th Cir. 1986)(citing Guffey v. United States, 310 F.2d 753, 754 (10th Cir. 1962); United States v. Garcia, 625 F.2d 162, 167 (7th Cir. 1980), cert. denied, 449 U.S. 923 (1980); Illinois v. Allen, 397 U.S. 337, 343-44 (1970)). New Mexico district court policy dictates that defendants in custody be shackled during hearings. See Tr. at 11:3 (Court). The U.S. Marshals Service, however, frequently unshackles one of the defendant's hands to facilitate allocution. The Court will follow the U.S. Marshals Service's practice in this matter.

Folse contends that the Court should follow the United States Court of Appeals for the Ninth Circuit's opinion in United States v. Sanchez-Gomez, wherein the Ninth Circuit held that, even at a sentencing hearing, "the court must make an individualized decision that a compelling government purpose would be served and that shackles are the least restrictive means for maintaining security and order in the courtroom." United States v. Sanchez-Gomez, 859 F.3d at 661. See Motion at 2. Folse's arguments do not convince the Court. The New Mexico district court judges and the U.S. Marshals Service have declined to follow United States v. Sanchez-Gomez, and the Supreme Court has since vacated United States v. Sanchez-Gomez on grounds

that the plaintiffs' claims were moot.  See United States v. Sanchez-Gomez, 138 S. Ct. at 1537-42.  The Court, moreover, continues to reject the Ninth Circuit's premise.  The individualized risk-analysis that the Ninth Circuit envisioned is impracticable.  In the Court's district, for instance, judges saw filings commenced against 3,829 defendants between March, 2017 and March, 2018.  Criminal Defendants Filed, Terminated, and Pending (Including Transfers), Federal Judicial Caseload Statistics 2018 Tables, U.S. Cts., https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables (last visited Jan. 11, 2019).  This number adds to the number of defendants in existing cases.  Furthermore, pure numbers conceal the defendants' turn-over within the courthouse.  Each defendant may appear in the courtroom multiple times through the pretrial, trial/plea, and sentencing process.  The Ninth Circuit's proposition that the judges and U.S. Marshals Service assess each defendants' security threat -- presumably before each courtroom appearance -- demands too much.  The Court, accordingly, adheres to the New Mexico district court policy of restraining defendants in custody.  The Court, therefore, grants Folse's Motion in part and denies it in part.

**IT IS ORDERED** that: (i) Defendant's Motion for Permission to Wear Civilian Clothing and be Unshackled at Sentencing, filed March 13, 2018 (Doc. 256), is granted in part and denied in part; (ii) Defendant Keven Folse may wear civilian clothing at his sentencing hearing; and (iii) Folse will not be fully unshackled during his allocution but the United States Marshals Service will unshackle one of Folse's hands for his allocution.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John C. Anderson
   United States Attorney
William J. Pflugrath
Samuel A. Hurtado
Paul Mysliwiec
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Sara Nathanson Sanchez
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes P.A.
Albuquerque, New Mexico

   *Attorneys for the Defendant*